214 WEST 39TH STREET CORP., Respondent, *v.* MISS FRANCE COATS, INC., et al., Appellants.

214 WEST 39TH STREET CORP., Respondent, *v.* JOSEPH H. INDICTOR et al., Appellants, et al., Defendants.

214 WEST 39TH STREET CORP., Respondent, *v.* WHITLEY TAILLEURS, INC., et al., Appellants.

214 WEST 39TH STREET CORP., Respondent, *v.* MORRIS PELTZMAN & SON, INC., et al., Appellants.

First Department, December 20, 1948.

*Joseph Calderon* of counsel (*Milton M. Bergerman* with him on the brief; *Bergerman & Hourwich,* attorneys), for appellants.

*Morway Picket* of counsel (*Count & Picket,* attorneys), for respondent.

COHN, J. The actions involve similar facts and identical questions of law. Plaintiff is the owner and landlord of a building at 214 West 39th Street in the borough of Manhattan, city of New York. In each action, defendant first named occupied for manufacturing purposes a separate floor of the building pursuant to a lease agreement with plaintiff for a stated period which

expired in January, 1948. During the term of each lease the tenant had sublet a portion of his entire floor to the second named defendant in each action (hereinafter referred to as " subtenant "), retaining a substantial part of the premises for his own use. Following the expiration of the main lease in each case, the tenant and subtenant continued in possession of their respective portions of the premises pursuant to the provisions of the Commercial Rent Law (L. 1945, ch. 3, as amd.).

Plaintiff landlord contends that the main tenant has ceased to have the right to constructive possession of the part of the premises which had been sublet and that the subtenant is required to pay rent directly to plaintiff. The main tenant asserts that, except as to the term and the amount of rent, the provisions of the lease are projected into the statutory tenancy, including the right to the constructive possession of the portion sublet and the right to receive rent from the subtenant. It is conceded that the subletting did not violate the lease. The subtenant also takes the position that it is to be continued as a statutory tenant of the main tenant.

On motions for judgments on the pleadings the Special Term granted a declaratory judgment in favor of plaintiff for the relief requested in each case upon the authority of *Gross* v. *Libby Properties, Inc.* (273 App. Div. 851, affd. 298 N. Y. 514) and *WMCA, Inc.,* v. *Blockfront Realty Corp.* (272 App. Div. 800) ruling that although subtenants under subleases made prior to the expiration of the main lease are protected in their possession by the provisions of the Commercial Rent Law, it is the owner of the premises and not the main tenant who is entitled to be regarded as the landlord of such subtenant at the expiry of the main lease.

The issue presented is: Where a tenant during the lease term has sublet a portion of leased premises retaining a substantial part of the space for his own business purposes, does the subtenant, upon the expiration of the main lease, continue in possession as the statutory tenant of the main tenant or as the direct statutory tenant of the landlord?

The purpose of the Commercial Rent Law was to continue the possessory rights of tenants and subtenants of commercial property during the declared emergency. Neither that statute nor other law recognizes privity of estate or contract between the subtenant and the over-landlord. A subtenant does, however, have possessory rights as against the tenant and under the Commercial Rent Law the tenant may not evict

the subtenant from possession during the declared emergency so long as the subtenant pays the emergency rent for his premises.

The term " landlord " is defined by subdivision (h) of section 2 of the statute (L. 1947, ch. 822): " ' Landlord.' An owner, *lessor sublessor* \* \* \* or other person receiving or entitled to receive rent for the use or occupancy of the whole or a part of any part of any commercial space." (Italics mine.)

" Tenant " is defined in subdivision (i) of section 2 of the same statute as follows: " ' Tenant.' A lessee, sublessee \* \* \* or other person entitled to the possession or to the use or occupancy of the whole or a part of any commercial space."

The effect of sustaining plaintiff's position here would be to completely upset in commercial and business properties the statutory scheme of maintaining the *status quo* of landlords, tenants and subtenants and would endanger the possessory rights of subtenants by eliminating the status of the main tenant, the only person against whom those rights can be asserted by the subtenant.

So far as is possible the statute should be construed to give effect to all of its provisions and in a manner that would tend to reach a consistent result. The provisions of the emergency rent control laws for the fixation of emergency rent payable by statutory tenants would be rendered impossible if at the expiration of a lease to a main tenant two or more separate tenancies are to be created because of subletting. There could be no emergency rent calculable for the portion retained by the main tenant which had not previously been a rentable unit.

Furthermore, subdivision (e) of section 8 of the statute (L. 1948, ch. 676) permits the landlord to demand a renewal lease from the tenant upon the same terms as the expired lease at a rental equal to the emergency rent. If the main tenant is no longer to be regarded as the tenant of the entire demised premises, how can he sign a renewal lease in the absence of an emergency rent for the smaller space? Then, too, in the case where there are multiple subtenants with whom the landlord has no privity, can it be said that the statute thrusts upon a landlord in substitution for a single tenancy of the entire premises, two or more tenancies for subdivided rental units?

The landlord is not required to accept performance of the terms of the main lease by a subtenant of his tenant but can insist upon the performance by the latter with whom he is

in privity. (*1154 Union Avenue Corporation* v. *Davis,* 223 App. Div. 464, affd. 249 N. Y. 561.) If we were to adopt the theory of plaintiff here, it might in many cases be utterly impossible to require a subtenant to attorn to a landlord with whom he had no contractual relationship, particularly where the subtenant has arranged for ingress and egress through the tenant's retained space or for the furnishing by the tenant of such facilities as stenographic and telephone services or the right to the use of tenant's equipment. There must also be considered the case where the main lease requires the tenant to pay taxes, water charges, to furnish heat or make repairs to the demised premises. These obligations would all be regarded as rent within the meaning of the act for determining emergency rent. By statute (§ 2, subd. [j]) rent is defined as follows: '' The consideration, including any bonus, benefit, or gratuity, charged, or received by the landlord * * * for the use or occupancy of the whole or any part of any commercial space.''

If there were two or more subtenants to be substituted for a single original tenant, there would necessarily arise the problem of determining who was to make such payments and in what amounts.

We can readily understand how our decision in *WMCA, Inc.,* v. *Blockfront Realty Corp.* (272 App. Div. 800, *supra*), might have led to the conclusion adopted by the Special Term. However, in that case a subtenant of an entire building which had itself subleased portions of the building, sought upon the expiration of the lease term to continue as a statutory tenant of the entire building. All of the rental space had been sublet and Blockfront Realty Corp. had retained possession only of common hallways, elevators and stairs necessary to the operation of the building. This court held that the Commercial Rent Law did not protect in that situation the intermediate constructive possession of Blockfront Realty Corp.

In *Gross* v. *Libby Properties, Inc.* (273 App. Div. 851, affd. 298 N. Y. 514, *supra*) the complaint brought by the tenant was dismissed for want of equity because the plaintiff evidently intended to abandon the use of the premises for active business and intended merely to keep a small fraction of the total space as a kind of token possession. Following the decision in the *WMCA, Inc.,* case (*supra*) the conduct of Gross was treated as merly a subterfuge to show possession and use. The factual situations in both the *WMCA, Inc.,* and *Gross* cases (*supra*) are obviously different from those in the case at bar.

The intention of the statute to preserve possessory rights in commercial properties can only be accomplished by continuing the tenant as landlord of the subtenant and continuing the status of the main tenant as tenant of the landlord with respect to the leased premises. Then each party has his statutory rights as against the other and in the absence of special circumstances the separate tenancies which existed during the lease term are continued as statutory tenancies during the emergency.

Accordingly, the orders and judgments appealed from should be reversed and judgment on the pleadings should be directed in favor of the defendants-appellants in each action declaring (1) that the defendant subtenant holds over in possession of his premises as statutory tenant of the defendant main tenant and is required to pay rent to the latter and (2) that in each case the defendant main tenant holds over in possession of the entire leased premises as a statutory tenant of plaintiff.

Dore, J. (dissenting). The statute in question, passed for the stabilization of commercial rents (L. 1945, ch. 3, as amd.), defines "commercial space" as space "used or occupied" for commercial purposes (L. 1947, ch. 822, § 2, subd. [a]). The definition of "commercial purposes" (§ 2, subd. [b]) refers to the manufacture and resale, the processing and displaying of personal property, etc., but does not include subletting of space not actually occupied by the tenant. "Rent" is defined as the consideration charged for the "use or occupancy" of commercial space. After termination of the main tenant's lease, the main tenant is no longer using or occupying for commercial purposes the part of the space such tenant wishes to continue to sublet *as landlord* against the will of the owner.

The basic purpose of the emergency rent legislation was to protect tenants *in possession* and prevent widespread evictions while the emergency lasted. The statutory language should be interpreted to effectuate that purpose. It was to protect tenants *as tenants* and not *as landlords*. Only such right of ownership is suspended as is necessary to meet the emergency purposes of the act. In continuing to act as landlord after his main lease has expired, the tenant is not seeking protection of his possession of space actually occupied by him for commercial purposes, but is seeking to perpetuate profits from subtenants derived from the owner's investment in the real estate. Accordingly, at least in a case such as this in which the owner of the premises is willing to accept

the subtenants, we may say, as we did in *Gross* v. *Libby Properties, Inc.* (273 App. Div. 851) that there is a " lack of equity " in the tenant's position. In *WMCA, Inc.*, v. *Blockfront Realty Corp.* (272 App. Div. 800) this court held that the emergency rent laws were not enacted for the benefit of persons merely in constructive possession of rental space in commercial buildings. The main tenant herein is obviously not in actual possession, for commercial purposes as defined by the act, of the part of the premises he seeks to continue to sublet.

While there are difficulties involved in working out the relationship, such difficulties should not be made the basis of thwarting the dominant purpose of the act. It is not impossible to calculate the emergency rent for the portions retained by the main tenant or the subtenants, neither of whom is disturbed in possession by the orders and judgments appealed from (cf. L. 1947, ch. 822, §§ 3, 4, 6, 7). As this landlord does not presently seek to remove the subtenant or the main tenant from possession of the part of the premises actually occupied, but is willing to accept them as tenants, subdivision (e) of section 8 containing the provisions for renewal of leases on terms substantially similar to the prior lease, would not appear to be presently applicable. That section is entitled " Grounds for removal of tenant from possession."

On the facts presented in this record, the main tenants after expiration of the over-lease retain no rights as landlords against the subtenants or the owner with respect to such part of the space as they do not actually occupy for commercial purposes and cannot compel such subtenants to deal with them rather than the owner; the owner's right to deal with the occupants is not suspended.

Accordingly, I dissent and vote to affirm the orders and judgments appealed from.

GLENNON, J. P., CALLAHAN and SHIENTAG, JJ., concur with COHN, J.; DORE, J., dissents and votes to affirm in opinion.

It is hereby ordered and adjudged that the judgments and orders so appealed from be and the same are hereby reversed, with costs to the appellants, and judgment on the pleadings *directed* in favor of the defendants-appellants in each action declaring (1) that the defendant subtenant holds over in possession of his premises as statutory tenant of the defendant main tenant and is required to pay rent to the latter and (2) that in each case the defendant main tenant holds over in possession of the entire leased premises as a statutory tenant of plaintiff.