TOWER LEASING CO., INC., Appellant-Respondent, *v.* 11 WEST 42ND STREET, INC., Respondent-Appellant.

First Department, July 1, 1952.

*Edward Lazansky* of counsel (*Benjamin Jaffe* with him on the brief; *Benjamin Jaffe,* attorney), for appellant-respondent.

*Louis Okin* of counsel (*Sidney B. Moskovitz* with him on the brief; *Sohn & Okin,* attorneys), for respondent-appellant.

DORE, J.   In *WMCA, Inc.,* v. *Blockfront Realty Corp.* (272 App. Div. 800 [May, 1947]), this court held that the defendant therein, a tenant of an entire building subletting to undertenants all the rental space in the premises, was merely in constructive possession and not entitled to protection of the emergency rent

laws. In *Axelrod* v. *11 West 42nd St.* (274 App. Div. 651 [Feb., 1949], affd 299 N. Y. 765), this court distinguished the *WMCA* case (*supra*) and held that the tenant therein (this tenant) was not in constructive possession but occupied the entire area for office and business purposes, i.e., to conduct the business of subletting rental space and furnishing service in connection therewith and was entitled to full protection of the emergency rent laws.

After the decision of this court in February, 1949, the Legislature by chapter 430 of the Laws of 1951, effective March 31, 1951, amended that portion of section 4 (now subd. 4 thereof), amending the said law to provide for the first time that prime tenants who sublet to others more than 20% of the space which the prime tenant rents from the owner, must furnish on demand by the landlord the statement herein in question. Plaintiff tenant refused to furnish the statement demanded by defendant landlord and brought this suit for a declaratory judgment contending the amendment has no application to plaintiff.

We think the learned Referee properly held that the statute was applicable. The New York State Legislative Annual for 1949 (p. 248, subd. [i]), referring to a prior amendment concerning statutory tenants who sublet to others 20% or more of their leased space (L. 1949, ch. 535), says: '' Sublessees by another amendment, would be made tenants of a landlord in certain instances where the main statutory tenants sublet 20 per cent or more of their leased space to others. The courts would have power and be expected to decide questions of the allocable value of space and services. Many such main tenants have unjustly enriched themselves at the expense of landlords whose rents are frozen and also deprive the City of the benefits of increased valuations for taxing purposes.''

The 1951 amendment, requiring the statement by the main tenant here in question, both in letter and spirit, by its express terms is applicable to the relationship between the parties herein. It applies to '' any tenant ''; viz., any tenant under the Business Rent Law (L. 1945, ch. 314, as amd.). By statutory definition that refers only to tenants of business space and expressly excludes dwelling space in hotels and rooming houses or apartment houses (see § 2, subd. [a]).

Nothing in the amendment sustains this tenant's contentions. This record establishes that except for a relatively small space reserved for plaintiff's office and reception room, plaintiff sublets all of the space originally covered by the leases. Mr. Axelrod, plaintiff's president, admitted that a number of plaintiff's

subtenants rent and occupy whole rooms or complete offices as distinguished from mere desk space, many of them having their own stenographers and telephones.

The tenant relies on our decision in *Axelrod* v. *11 West 42nd St.* (*supra*) and claims it is here controlling against the landlord. But in that case we merely held (p. 653) on the facts disclosed that this tenant was not in *constructive* possession but in effect in actual possession and " entitled to the full protection of the emergency rent laws." As above indicated, the amendments we are now construing were passed subsequent to our decision in the *Axelrod* case. It is proper to assume that in passing the amendment the Legislature was not in ignorance of our decision. In amending subdivision 4 of section 4, the Legislature could have exempted a state of facts, such as here disclosed, where the tenant subleases space and renders services but there is no such exemption in the amendment. By its terms it applies to " any tenant " who is subletting " twenty per centum or more of the business space *occupied* by him " (emphasis supplied) and it covers a state of facts in which a tenant renders services to his subtenants, precisely such a state of facts as is here presented. The amendment was not intended to put plaintiff out of business but was intended to prevent plaintiff and others similarly situated from retaining solely for themselves large profits they may have been making from subleasing space in the landlord's building at the expense of the landlord " whose rents are frozen ". The application of subdivision 4 of section 4 to plaintiff does not violate any of the purposes of the emergency rent legislation. In any event that is a question that should be addressed to the Legislature. We hold that by its terms, as herein interpreted, the amendment applies to this tenant, that the learned Referee was correct in so holding, and that plaintiff is required to serve the statement specified in the section. This tenant may not have its cake and eat it too; it may not claim, as it did in the *Axelrod* case, the protection of the emergency rent laws without complying with their provisions subsequently enacted; when that case was decided, the amendment now before us was not in existence.

Under the first clause of amended subdivision 4, any tenant who sublets 20% or more of the business space occupied by him must pay the landlord each month the gross rents receivable by him from all subtenants less the reasonable value of the prime tenant's services to the subtenants plus the emergency rent allocable to the business space retained by the tenant for his own use; there are other clauses, (b) and (c), of the same subdivision.

We need not consider the construction of clause (b) of the law, as the landlord is not proceeding under that subdivision. Under the state of facts herein disclosed, we interpret the statutory phrase '' less the reasonable value of the services supplied '' to include under ordinary circumstances a reasonable profit to the prime tenant for the services so supplied. In normal business usage, the reasonable value of services rendered includes a reasonable profit, otherwise a man in business rendering services would merely be reimbursed for actual expenditures and thus not enabled to procure any margin of profit that would permit his business to continue. Under that clause, however, the prime tenant may properly claim a profit on the *business* services as such rendered to its subtenants, incidental to the sublet space but not on the *sublet space* as such. We so interpret the third decretal paragraph of the judgment appealed from and on such interpretation affirm it with the rest of the decree.

The learned referee also properly permitted the tenant an opportunity to comply with the statute and furnish the landlord with the statement required under the second paragraph of subdivision 4 as of the original date. The statement was not furnished within the twenty days because, in good faith, the tenant and its counsel believed the statute was not applicable.

If the parties will approach their relationship in a fair and practical way, they should be able to formulate a fair working arrangement without additional unnecessary litigation.

The judgment appealed from should be affirmed, without costs, the date of plaintiff's permitted compliance with the statute to be fixed at ten days after service of the order herein with notice of entry.

CALLAHAN, J. (dissenting). This appeal involves a construction of subdivision 4 of section 4 of the Business Rent Law (L. 1945, ch. 314, § 4, as amd. by L. 1949, ch. 535, by L. 1950, ch. 326, and by L. 1951, ch. 430).

The statute provides, *inter alia,* as follows:

'' 4. At the option of the landlord, (a) any tenant who shall sublet twenty per centum or more of the business space occupied by him shall pay to the landlord each month the gross rents receivable by such tenant from all subtenants, less the reasonable value of the services supplied by the tenant to such subtenants, plus the emergency rent allocable to the business space retained by the tenant for his own use; or (b) any person who shall occupy or use business space as sublessee or subtenant of a tenant shall be subject to the obligations and liabilities of such

tenant as tenant in such space and the landlord shall be entitled to receive from such sublessee or subtenant or successor thereof the rent which such tenant is or was obligated to pay the landlord as the emergency rent of the premises, except that any such sublessee or subtenant who shall occupy less than the entire space of the tenant shall pay rent to the landlord in the proportion which the space occupied or used by him bears to the entire rent which the tenant is or was obligated to pay to the landlord, less the reasonable value of the services furnished by the landlord to other occupants of such space, if any   *   *   *.

"Any tenant who shall sublet twenty per centum or more of the business space occupied by him shall furnish the landlord, upon the written request of the landlord a written and verified statement containing the following information with respect to each of such subtenants, viz: the name and address, the amount of space occupied, the emergency rent, and the terms of the lease, rental agreement or tenancy under which occupied; and, if such space is occupied under a written lease or rental agreement, a true copy thereof shall be appended to such statement. Such request by the landlord shall be made within thirty days prior to the date of expiration of the lease or rental agreement of the tenant, or at any time thereafter while such tenant remains in possession, and such statement shall be furnished by the tenant within twenty days after the making of such request."

The question for decision is whether the statute applies to the plaintiff, which occupies a considerable portion of a floor in the defendant's office building and provides desk space, furnished offices, etc., with services to others.

In *Axelrod* v. *11 West 42nd St.* (274 App. Div. 651, affd. 299 N. Y. 765), we had occasion to consider the nature of the tenancy and business of the very plaintiff in this case. A reading of that decision will disclose the precise nature of the business being carried on. There this court made a finding of fact that: "5. In effect the entire area demised to the tenant Tower Leasing Co., Inc. was reserved to the said tenant to render services to the sub-tenants, and Tower Leasing Co., Inc. occupied the entire demised area for office and business purposes."

In this case there is no claim of any change in circumstance that would affect such finding that the tenant (plaintiff) was in possession of the entire premises, which, of course, necessarily means that it did not sublet 20% or more of its space to other occupants. Although the issue in the *Axelrod* case (*supra*) was different, this finding of fact is conclusive upon the parties in the present litigation, particularly as to the matters which were

expressly litigated between them (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304; *Reich* v. *Cochran*, 151 N. Y. 122; *Doty* v. *Brown*, 4 N. Y. 71; *Cromwell* v. *County of Sac*, 94 U. S. 351; 2 Freeman on Judgments [5th ed.], § 672).

Aside from any question of conclusiveness as to the findings in the prior litigation between these parties, it seems to me that' the Legislature did not intend the statute aforesaid to apply to a situation like the present where there is no subletting of any definable portion of a tenant's premises.

Rather, the statute would seem to have been designed to remedy situations such as the one that existed in the case of *214 West 39th St. Corp.* v. *Miss France Coats* (274 App. Div. 597). In that case a definable area was sublet. Whatever services were rendered were merely incidental. The business of the prime tenant was not the letting of space or furnishing service. This case is likewise distinguishable from *WMCA, Inc.*, v. *Blockfront Realty Corp.* (272 App. Div. 800) where the prime tenant was the lessee of a loft building subletting the lofts but occupying no part of the building itself and rendering only such incidental services as cleaning, lighting of the halls, furnishing of heat, etc. *Hart* v. *Interborough News Co.* (277 App. Div. 97) is distinguishable on like grounds and further because the prime tenant voluntarily surrendered possession. In none of the earlier cases was a situation involved like the present where the very purpose of the letting was to permit the tenant to carry on a business of furnishing services to numerous clients who incidentally occupied as a group a portion of the space or furnished services with which no physical occupancy was connected. This statute it seems to me by its terms indicated an intention to cover situations involving an allocable portion of a rental area measurable by a percentage of the whole space and definable by metes and bounds which the statutory reference to subletting 20% or more of the tenant's space has pointed up. (See, also, Report of New York State Temporary Commission to Study Rents submitted to Legislature March 23, 1949; N. Y. Legis. Doc., 1949, No. 52.)

It is to be noted that the statute does not provide for any retention by the tenant of any of the profits of its business. The tenant is required under the statute to pay to the landlord the gross rent received from subtenants less the reasonable value of the services supplied by the main tenant to the subtenants. To thus apply the statute in a situation like the present would in effect require the tenant to be no more than an employee of the landlord for a compensation represented by the reasonable

value of the tenant's services, a relationship which cannot be created by law nor compelled to be entered into by statute.

It is suggested in the majority opinion that the reasonable value of the services must include some profit for the main tenant. This would mean that instead of being an employee there would be a relationship in the nature of a partnership created, again by compulsory provision of statute. So construed, the statute it would seem to me would bring up questions as to the impairment of contract which need not be met if a proper construction of the law is adhered to. The purpose of this statute, and a commendable one, was to prevent a statutory tenant from profiting as a middleman on space which it did not occupy. The entrepreneur of space was not to receive a profit from the building shortage. But this tenant is not a mere entrepreneur of space. His business is as much rendering service as furnishing space. It would seem proper to confine the statute to instances where the furnishing of space is involved with the rendition of services as a mere incident rather than to instances where one is carrying on a business in the whole of the space leased and requiring him to turn over or share the profits of his business with the landlord. It must be remembered that under clause (b) of this statute this landlord might have and still may have the right to deal directly with the subtenants, ignoring any consideration of the fact that the tenant had supplied furniture, was furnishing services and was entitled to the good will of its business. It would seem clearer when we consider such possibilities that the law was not intended to apply to a case like the present one. The instant situation does not lend itself to making the clients of the main tenant direct tenants of the landlord — and this is one of the avowed purposes of the statute.

It may be of interest to note that the first amendment to this section of the Business Rent Law (L. 1949, ch. 535) made the section inapplicable to cases where the lease between the landlord and the main tenant contained permission to sublet. The omission of this exception in later amendments (L. 1950, ch. 326; L. 1951, ch. 430) might have some significance if this was a case of subletting a defined portion of the tenant's space. Permission to sublet usually relates to the whole or part of the physical space. The exception, however, is further indication that the Legislature was thinking of the ordinary case of subletting.

In this view of the matter, I find it unnecessary to consider the merits of the defendant's cross appeal. In any event, I agree with the position of the majority on that phase of the case.

476

I vote to reverse the judgment appealed from and grant a declaratory judgment in favor of the plaintiff for the relief demanded in the complaint.

PECK, P. J., COHN and VAN VOORHIS, JJ., concur with DORE, J., CALLAHAN, J., dissents and votes to reverse, in opinion.

Judgment affirmed, without costs, the date of plaintiff's permitted compliance with the statute to be fixed at ten days after service of a copy of the order, with notice of entry thereof.