239 F.2d 896
 Ruth B. KERRY, Appellant,
v.
Joseph R. SCHNEIDER, Trustee in Bankruptcy of Harold Edwin Kerry and the Community of Harold Edwin Kerry and Ruth B. Kerry, his wife, Bankrupts, Appellee.
 No. 14533.
 United States Court of Appeals Ninth Circuit.
 October 26, 1956.
 
 Bogle, Bogle & Gates, Arthur G. Grunke, Seattle, Wash., for appellant.
 Stanley J. Krause, Aberdeen, Wash., for appellee.
 Before STEPHENS, POPE and FEE, Circuit Judges.
 JAMES ALGER FEE, Circuit Judge.
 
 
 1
 On October 5, 1953, Harold E. Kerry and the community consisting of himself and his wife were adjudicated bankrupt on voluntary petitions. Ruth Kerry, the wife, who was not adjudicated in her individual capacity, filed a petition to require Schneider, who was trustee of the bankrupt, to abandon the right, title and interest of Kerry in a partnership and to allow her to foreclose a purported "pledge" thereon. The petition was denied by the referee, and the District Court affirmed. Appeal by Ruth Kerry followed.
 
 
 2
 The history of the transaction follows. Bankrupt was the owner of about 51% of the issued shares of stock in West Tenino Lumber Company, a corporation. Ruth Kerry, considerably before the time here involved, had loaned him $29,250.00 from her separate funds and received in pledge the shares of stock held by him. There is no question as to the validity of this transaction. Subsequently, when Kerry was becoming financially involved, by agreement Ruth Kerry permitted the pledged shares to be voted for dissolution. In lieu, she was to receive, as security for the loan, a so-called assignment of the interest in the partnership to be formed. The corporation was duly dissolved. A partnership was then formed by bankrupt and three other persons, in which he had a 45/88 interest in net income, net losses and capital gains and losses. Withdrawals of profits were to be made as would be agreed. Bankrupt was managing partner.
 
 
 3
 A document was given by bankrupt to Ruth Kerry, which is set out below:
 
 
 4
 "Assignment
 
 
 5
 "H. E. Kerry does hereby assign and set over to Ruth B. Kerry, all of his right, title and interest in and to the partnership known as West Tenino Lumber Company which is a partnership consisting of H. E. Kerry, C. L. Stickney, H. A. Preszler and Israel Torrico. Said assignment is substituted security for that certain pledge agreement entered into between H. E. Kerry and Ruth B. Kerry, dated July 28, 1952, and which security is to act as continuing security for that certain note dated July 28, 1952, until said note is paid in full.
 
 
 6
 "Dated this 30th day of December, 1952.
 
 
 7
 /s/ H. E. Kerry"
 
 
 8
 This document was delivered more than four months before petition in bankruptcy was filed.
 
 
 9
 The partners testified they knew of the arrangement, but no one else had notice of it. The name of Ruth Kerry did not appear at any place on the books and records of the company. No record was made on the books of the partnership or any other place or office of the document above set out. It was not filed with the Secretary of State. It was not filed as a chattel mortgage. Her name does not appear as one having an insurable interest in any of the partnership insurance policies. And no notice of her continuing interest was given to creditors of Kerry either prior or subsequently.
 
 
 10
 A certificate as to those having an interest in the partnership, stating the names of all of the partners, was filed according to Washington law. Ruth Kerry does not appear upon it. No certificate was filed showing she had an interest in the partnership. Although there was a profit in the partnership for 1953, of which the share of bankrupt was $3,027.67, and there was a surplus on hand, Ruth Kerry did not demand and her husband, as manager of the partnership, did not pay her these proceeds nor any part thereof. In fact, she received no proceeds from the partnership at any time.
 
 
 11
 Bankruptcy occurred on October 5, 1953, upon voluntary petition.
 
 
 12
 It was proper in any event for the trustee to deny a petition to abandon as burdensome property to which bankrupt had a right and of which he was in control and deny a petition for appellant to foreclose thereon. However, the question has been treated as if it involved the right of the trustee to the interest in the partnership free and clear of any pledge to Ruth Kerry. This question will be considered in the light of the petition.
 
 
 13
 The trustee, as of the date of filing of the petition, became possessed of all the right, title and interest of the bankrupt in the partnership. The property rights of the bankrupt were:
 
 
 14
 "(1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management." R.C.W. 25.04.240.
 
 
 15
 The trustee was thus placed in position described by R.C.W. 25.04.250:
 
 
 16
 "Nature of a partner's right in specific partnership property. (1) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.
 
 
 17
 "(2) The incidents of this tenancy are such that:
 
 
 18
 "(a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.
 
 
 19
 "(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property."
 
 
 20
 No sale or other transfer would be required for the trustee to step into the shoes of bankrupt as a member of the partnership as of the date of the filing of the petition.
 
 
 21
 Above and beyond this, the trustee was possessed of all the rights of a lien creditor of bankrupt:
 
 
 22
 "The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists." 11 U.S.C. § 110, sub. c.
 
 
 23
 He was thus in a position to foreclose a lien of a creditor in the bankruptcy court as described in R.C.W. 25.04.280:
 
 
 24
 "Partner's interest subject to charging order. (1) On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which the circumstances of the case may require.
 
 
 25
 "(2) The interest charged may be redeemed at any time before foreclosure, or in case of a sale being directed by the court may be purchased without thereby causing a dissolution:
 
 
 26
 "(a) With separate property, by any one or more of the partners, or
 
 
 27
 "(b) With partnership property, by any one or more of the partners with the consent of all the partners whose interests are not so charged or sold."
 
 
 28
 Thus the court was entirely correct in view of the position of the trustee under the Bankruptcy Act and the statutes of the State of Washington relating to partnerships in refusing to abandon this property or permit Ruth Kerry to foreclose her alleged assignment in another forum. But the trustee filed a petition also in which he prayed that the referee determine "the right, title or interest of Ruth B. Kerry and the trustee in and to the alleged partnership" interest of the bankrupt.
 
 
 29
 The referee and the trial court moreover held that appellant had no enforceable pledge on the partnership property or interest of bankrupt, and thus left Ruth Kerry, individually, in the position of a general creditor, to which question we now address ourselves. First, it must be ascertained just what the document above set out was. It is headed "Assignment." Based upon this and the use of the words "assign and set over," appellant treats the document as a technical assignment. From this it is argued that an "assignment" of intangible property need not be recorded or noticed in order to have full effect in transferring title to the property under Washington state law. This position may be conceded for the purposes of argument as to a true assignment.[1] But there are no Washington statutes or decisions which directly decide that a mortgage, pledge or encumbrance, although called an assignment, will be given such effect as against creditors who have relied upon the appearance of ownership of an intangible in the original possessor.[2]
 
 
 30
 The stock of the bankrupt corporation had previously been pledged to Ruth Kerry. At the time of the formation of the partnership, she could have been made a partner, to whatever extent it was necessary to give her an interest in the business for protection of her separate funds. But it is objected that, unless Ruth Kerry became a member of the partnership, which she was not bound to do, under the Uniform Act she could not exercise control over the property thereof, nor had she any right to interfere with the management or administration of its business or affairs. But in any event, even under the construction of appellant, she was entitled to receive the profits. There were profits accruing to the share of the bankrupt, but none was ever paid to her. Since the referee and the trial court held that lack of indicia of possession in Ruth Kerry comprised grounds for holding the supposed pledge invalid, the question of whether any law of the state required public record must be given attention.
 
 
 31
 The Uniform Partnership Act, which is adopted in the State of Washington,[3] makes a clear distinction between the different types of conveyances of the right, title and interest of an individual partner. "`Conveyance' includes every assignment, lease, mortgage, or encumbrance." R.C.W. 25.04.020. Clearly, the document before the Court is not a lease. It is not necessary to debate the question of whether an assignment could be made as security for a pre-existing debt, or whether such a conveyance is limited to a transfer of the interest absolutely, within the meaning of R.C.W. 25.04.270.
 
 
 32
 The difference between an absolute conveyance and the imposition of an encumbrance or mortgage is clearly recognized in the law.[4] An instrument may be on its face a deed, but, if the intent be to use the property as security, it will be a mortgage and foreclosure will be required.[5]
 
 
 33
 It seems clear to this Court that, since the partnership statute uses the words "mortgage, or encumbrance,"[6] an assignment, as avowed security of a preexisting debt, falls within such a classification. It must be held that, by including these words in the statute, the legislature made applicable the laws relating to recordation of mortgages of like property interests. This sweep includes the following sections:
 
 
 34
 "Chattel mortgages authorized — Crop mortgages. Mortgages may be made upon all kinds of personal property; and upon growing crops and upon crops before the seed is sown or planted as follows: * * *" R.C.W. 61.04.010.
 
 
 35
 "Requisites to validity — Filing. A chattel mortgage is void as against all existing and subsequent creditors of the mortgagor * * * unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without design to hinder, delay, or defraud creditors, and unless it is acknowledged and filed, within ten days from the time of its execution, in the office of the auditor of the county in which the mortgaged property is situated." R.C.W. 61.04.020.
 
 
 36
 The elaborate section of the Partnership Act requiring a creditor to reduce his claim to judgment and to have it registered for a lien seems to strengthen this conclusion.[7] Therefore, we are of opinion that, if the matter ever comes before the courts of the State of Washington, it will be held that an assignment of an interest in a partnership for security must be recorded to give it priority over debts of the assignor. Thus the partnership will not be dissolved, but these creditors will be given notice.
 
 
 37
 It is urged upon us that the Supreme Court of the State of Washington has held that there need not be recordation of an assignment of an intangible.[8] However, these cases may well be distinguished.[9] There is a holding that the mortgage of a leasehold which is personal property must be recorded to give it effect as security.[10] We are of opinion, however, that court will give weight to the language of the Uniform Partnership Act as adopted by that state and the amendment of the chattel mortgage statute which was in force in the State of Washington when this case arose.[11]
 
 
 38
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 A "true assignment," as herein used, means the complete sale of a partnership interest, and relinquishment of control over partnership affairs as is contemplated, inter alia, by R.C.W. 25.04.270
 
 
 [2]
 See Fales Co. v. O. H. Seiple Co., 171 Wash. 630, 19 P.2d 118
 
 
 [3]
 R.C.W. 25.04.010 et seq
 
 
 [4]
 Olsen v. National Grocery Co., 15 Wash. 2d 164, 130 P.2d 78
 
 
 [5]
 Keeler v. Commercial Printing Co., 16 Wash. 526, 48 P. 239; R.C.W., ch. 61.08
 
 
 [6]
 R.C.W. 25.04.020
 
 
 [7]
 R.C.W. 25.04.280
 
 
 [8]
 See, as decisions most commonly cited in support of this proposition: Bellingham Bay Boom Co. v. Brisbois, 14 Wash. 173, 44 P. 153, 46 P. 238; Heermans v. Blakeslee, 97 Wash. 647, 167 P. 128
 
 
 [9]
 On their facts, neither of these cases involved the conveyance of a security interest, but rather each involved an absolute assignment of a chose in action. In Bellingham, the absolute assignment, although not filed, was prior in time to, and therefore prevailed over, a subsequent garnishment. In Heermans, the complaint did not show that the subject of the assignment was being reached by the later garnishment process
 
 
 [10]
 Farmers' State Bank v. Scheel, 124 Wash. 429, 214 P. 825
 
 
 [11]
 Subsequent to the Heermans decision, supra, Note 8, the chattel mortgage statute, now R.C.W. 61.04.010, quoted supra, was amended, Sess.Laws (1929), p. 406, § 1. The amendment omitted, following the clause, "Mortgages may be made on all kinds of personal property", the following language, "and upon the rolling stock of a railroad company and upon all kinds of machinery, and upon boats and vessels, and upon portable mills, and such like property" (see Washington Code Annotated (Pierce, 1913), Title 349, § 1), thereby removing the foundation for the ejusdem generis argument apparently successfully made in Heermans. A later case, Hughes, Inc., v. Widders, 187 Wash. 452, 60 P.2d 243, reasserts the Heermans language in a dictum, but without noticing the recent amendment