COWEN, Senior Judge,
delivered the opinion of the court:
Plaintiff (Allan Construction Co., Inc.), and Francis L. Bertling, as joint venturers, entered into a levee repair contract with the Corps of Engineers. During the first 2 years of the contract, progress payments were made payable to "Allan Construction Co., Inc. & Francis L. Bertling (Joint Venture).” About 2 years after the contract was executed, Francis L. Bertling (Bertling) was adjudicated to be bankrupt, following which two progress payments were made payable to "Allan Construction Co., Inc. & Daniel E. O’Cbnnell, Trustee in Bankruptcy for Francis L. Bertling (Joint Venture).” Those checks were mailed to the trustee, Whereupon plaintiff declared by letter that this action was a breach by the Government which effectively terminated the contract, but said that plaintiff would complete the contract on a quantum meruit basis. Plaintiff continued performance, completed the work, and was eventually paid all remaining moneys due under the contract. Plaintiff brought this action to recover the sum of $882,596, plus overhead and profit, as damages which plaintiff asserts it is entitled to recover on.a quantum meruit basis. For the *195 reasons to be discussed, we find, upon the facts before us, that if and to the extent that the defendant breached the contract, plaintiff has been paid the full amount it is entitled to recover as damages.
I.
The facts that are material to our decision are not in dispute. On June 30,1970, plaintiff and Francis L. Bertling, d/b/a/ Bertling Construction Company (Bertling), entered into a contract with the United States, acting through the Corps of Engineers (hereafter the Corps or defendant), for the performance of repair work on levees along the East Brazos River in Texas. On June 24, 1970, prior to the date the contract was executed, Henry S. Cherry, plaintiffs vice-president, wrote the Corps of Engineers, stating that if the contract was awarded "we will perform all work required according to the plans and specifications pertaining thereto.” On the same day, a substantially similar letter was submitted by Bertling. In the block on the contract form giving the name and address of the contractor, it was stated that it was a joint venture, and the signature page likewise designated the contractor as a joint venture. In the performance and payment bonds, the principal was designated as "Allan Construction Co., Inc. & Francis L. Bertling, Joint Venture.” The notice to proceed was issued on July 1,1970; it was sent to the joint venture at its post office address, and the receipt thereof was acknowledged by the written signature of Henry Cherry, plaintiffs vice-president.
In order to receive payment under the contract, it was necessary for the contractor to submit payment estimates and on 23 of these forms the contractor was again designated as a joint venture, and the payee was described as "Allan Construction Co., Inc. & Francis L. Bertling, (Joint Venture).” On Payment Estimates 1-14, covering the period from August 31 to September 30, 1971, Francis L. Bertling signed for the joint venture. On Estimates 15-23, covering the period from October 31, 1971 to June 23, 1972, Henry Cherry signed for the joint venture. These 23 progress payments totaled $1,062,777, which represented the earnings under the contract to June 23, 1972, less $21,673 *196 withheld as retained percentage. On Estimate No. 23, plaintiff represented that the contract was 84.29 percent complete.
Twenty-three checks representing the progress payments were made payable to "Allan Construction Co., Inc. & Francis L. Bertling (Joint Venture).” Five of those checks were picked up personally by Francis L. Bertling; the remainder were mailed to the post office address of the joint venture designated in the contract.
On October 4,1971, Bertling informed a representative of the Corps that due to his financial difficulties, plaintiff would take over the administration of the contract. On the same day, plaintiffs president informed defendant’s representative that Bertling would still be a part of the joint venture. For the next 9 months, work under the project continued without incident under plaintiffs management. As before, progress payments were made payable to plaintiff and Bertling as a joint venture, and this was done without complaint on plaintiffs part, up to and including the 23rd progress reporting period which ended in June 1972.
The event which precipitated the present controversy occurred on June 28,1972, when Bertling filed a petition in bankruptcy. He was adjudicated a bankrupt, and on July 11, 1972, notice of this fact was sent to defendant. Defendant then began extensive efforts to comply with its obligations to make progress payments due under the contract and at the same time to avoid violations of any requirements of the district court. Having learned that Daniel E. O’Connell had been appointed trustee in bankruptcy for Bertling, defendant made inquiry of his office and was advised that to the extent that payment would otherwise be made to Bertling, the payments should be made payable to the trustee. On September 29, 1972, defendant directed a letter to E. H. Patton, Jr., Referee in Bankruptcy, describing the executory contract the Corps had entered into with the joint venture, referring to the instruction it had received from the trustee’s office, and stating that defendant contemplated issuing a check payable to "Allan Construction Co., Inc. and Daniel E. O’Connell, Trustee in Bankruptcy for Francis L. Bertling *197 (Joint Venture),” to be mailed to the contractor’s address. The letter further requested that the referee advise whether this or some alternate action would be proper and also requested an early reply to avoid a delay in making the progress payment and the possibility of a breach of contract. On August 31,1972, Payment Estimate No. 24, signed by plaintiffs vice-president was submitted for the period from June 24, 1972 to August 31, 1972, in the amount of $15,678. On September 30, 1972, Payment Estimate No. 25 was submitted by plaintiffs vice-president for the period from September 1, 1972, to September 30, 1972, in the amount of $9,270. As in the past, the payment estimates provided for the amounts to be paid to the joint venture at the address designated in the contract.
On October 3, 1972, Arthur E. Moller, Referee in Bankruptcy, responded to defendant’s letter of September 29, 1972, with the statement that the trustee had been vested by operation of law with title to all of the property of Bertling, the bankrupt, "including all rights of action and interest in any executory contract.” The letter further stated that any payments becoming due to Bertling should be made to O’Connell, as trustee.
Believing that it was acting in compliance with the instructions of the referee, the defendant sent the trustee a letter on October 4, 1972, enclosing a check in the amount of $15,678 for Estimate No. 24, payable to the plaintiff and to the trustee. The check was accompanied by a letter stating that the plaintiff was conducting operations to complete the contract and that plaintiff would appreciate action by the trustee to identify and make available to plaintiff the proceeds of the check. On October 16, 1972, a check in the amount of $9,270, for Estimate No. 25, was sent to the trustee; and again it was made payable jointly to the plaintiff and to the trustee.
On October 17, 1972, plaintiffs vice president wrote to the Corps stating that the defendant’s failure to pay for work performed during the months of August and September 1972 constituted a default under the contract and that plaintiff was exercising its right to terminate the contract. However, the letter stated that plaintiff would complete the remaining work on a quantum meruit basis.
*198 On October 30, 1972, after receiving the notice from plaintiff, defendant wrote Referee Patton. The letter outlined the events that had occurred since Bertling was declared a bankrupt and recited the efforts which the Government had made in urging cooperation between plaintiff and the trustee to the end that the progress payments would be utilized for the completion of the contract, thus fulfilling defendant’s obligation to make the progress payments. Specifically, the defendant requested the referee to confirm that the bankruptcy court had jurisdiction to control payments under the contract and that they were being made in accordance with the court’s order. In the alternative, the defendant requested that if for any reason the progress payments should not be made payable to the plaintiff and the trustee jointly and mailed to the latter, the referee direct the trustee to return the checks he had received to the District Office of the Corps of Engineers with the statement that the trustee had no interest in nor right to these checks. On November 3, 1972, Referee Patton responded by writing that the letter of October 3, 1972 from Referee Moller did not make any attempt to determine what payments were in fact or law due Bertling. The referee advised that if plaintiff and the trustee could not agree on the use of the progress payments, legal proceedings should be instituted to determine the rights of the parties. The letter concluded with the statement that the bankruptcy court was not in a position to make an ex parte determination on the question of jurisdiction nor on the merits of the claim.
On November 13, 1972, the Corps responded to plaintiffs letter of October 17,1972, in which plaintiff had stated that the contract was terminated. The reply stated that since the contract was with the joint venture, the Government had no right or obligation to make the payments solely to plaintiff and that the trustee had elected to receive the progress payments and had therefore undertaken Bertling’s obligation to perform the contract jointly with plaintiff. The letter also stated that although plaintiff claimed to hold a written assignment from Bertling, terminating the joint venture and assigning the contract to plaintiff, it had failed to comply with defendant’s request for a copy of the *199 assignment. The letter closed with the assertion that plaintiff had no right to terminate the contract, to name itself as a successor contractor, or to complete the work on a quantum meruit basis.
On November 16,1972, the Corps wrote plaintiff in reply to the letter in which plaintiff had submitted bills on a quantum meruit basis. The letter repeated many of the statements in the Corps’ letter of November 13, and stated that plaintiff must be considered as performing work under the contract, and that any work otherwise performed by plaintiff would "necessarily be that of a volunteer.”
Beginning with Payment Estimate No. 26, for the period ending October 31, 1972, and continuing through Payment Estimate No. 37, for the period ending October 18, 1974, each estimate was sent to plaintiff but none was signed and returned by plaintiff. Each estimate called for payment to the joint venture.
The work on the contract was completed and accepted on October 17, 1974. Since the Government had heard nothing from the trustee, the Corps wrote him again on March 4, 1975. The letter contained a statement of the amounts of all progress payments that had been earned, including the two checks held by the trustee. The trustee was informed that plaintiff was claiming entitlement to the two checks held by the trustee and to the balance of $175,000 due and unpaid on the contract. The Corps requested that trustee state whether he was asserting jurisdiction over and entitlement to payments due under the contract; and if he was not asserting any such rights, the trustee was asked to return the two checks which were sent to him on October 4, and October 16, 1972. The trustee replied by letter of March 5, 1975, stating that he could neither release the checks in his possession nor disclaim any interest or right in the remaining balance due under the contract, without an appropriate order from the United States District Court for the Southern District of Texas.
Between March 10, 1975, and June 4, 1975, letters were exchanged between counsel for the Corps and plaintiffs attorney regarding the balance due by defendant on the contract. In view of the sharp dispute between the parties, no agreement was reached.
*200 On April 13, 1976, an interpleader complaint was filed in the United States District Court for the Southern District of Texas, requesting that court to determine among plaintiff, the trustee in bankruptcy, and the Internal Revenue Service, entitlement of the unpaid contract proceeds of $157,070.40, and the two checks totaling $24,948, which had been previously sent to the trustee. On December 12, 1977 — 20 months later — the parties entered into a stipulation of settlement as a result of which the total amount due under the contract was paid to plaintiff, except for $12,500 paid to the Internal Revenue Service for back taxes due, and the sum of $100, which was retained to keep the contract open administratively. It was agreed that the settlement was made without prejudice to any claims which plaintiff might have under the contract or otherwise.
In its suit here plaintiff claims that in order to complete work on the project from October 17, 1972, to October 17, 1974, it had expended the sum of $1,071,936.65. After subtracting the sum of $214,288.65 paid to it under the settlement agreement, plaintiff alleges that defendant is now indebted to it in the amount of $882,596, as quantum meruit for its performance of the contract.
II.
Plaintiff has argued vigorously that the relationship between itself and Bertling did not constitute a joint venture. In support of this contention, plaintiff has annexed to its motion an affidavit by its vice president to the effect that during a preconstruction conference on July 21, 1970, both Bertling and plaintiffs vice-president informed two named representatives of the Corps that plaintiffs sole function was to provide Bertling with bonding capacity. We find that this statement standing alone, is not sufficient to raise a triable issue of fact. There is no showing that the notification was given to persons who understood the legal effect of the statement, who had authority to receive it, to take action on it, and to inform the contracting officer that designations of the contract as a joint venture in subsequently executed contract documents should be treated as untrue and incorrect. United States v. Currency Totalling *201 $48,318.08, 609 F.2d 210, 214-215, reh. den. 612 F.2d 579, (5th Cir. 1980). The statement is in conflict with plaintiffs conduct during the performance of the contract, with numerous documentary materials submitted by members of the joint venture, and with representations made to the Corps by plaintiff after the controversy arose. As previously stated, plaintiffs vice-president wrote the Corps of Engineers on June 24, 1970, and stated that if the contract was awarded "we will perform all work required to the plans and specifications pertaining thereto.” Moneys paid by the defendant for the performance of the contract were deposited in a joint bank account. In numerous contract documents, beginning with the contract itself, and continuing to progress payment estimates for the period ending June 23, 1972, it was represented to defendant that a joint venture existed. Specifically, plaintiffs vice-president signed for the joint venture on the payment estimates for the period from October 31, 1971 to June 23, 1972, and the defendant had the right to rely on plaintiffs action as a requisite to payment of the amount due. After plaintiff took over performance of the contract, it requested that the progress payments be made solely to it. Plaintiff stated that it had advised the Corps that a written agreement had been entered into between plaintiff and Bertling which terminated the joint venture and assigned the entire contract to plaintiff. However, in spite of requests made by the Corps for a copy of the agreement, there is no evidence that plaintiff ever supplied defendant or the trustee with a copy of the alleged agreement. As we have emphasized, plaintiff claimed that the joint venture had been terminated — not that it had never existed. In the face, of plaintiffs actions and representations to the Corps after the pre-construction meeting, we find that even if a joint venture did not in fact exist, the defendant had the right to treat plaintiff as a member of a joint venture.[1] This is the express holding of a Texas court which had occasion to examine this particular joint venture. Allan Constr. Co. v. Parker Brothers & Co., 553 S.W.2d 751, (Tex. Civ. App., 1976.) There, one of the suppliers on the project involved here, sued Allan Construe *202 tion Co., Inc. on the ground that it was liable on a contract which Bertling had made as a member of the joint venture. Although the court found that one of the essential elements needed to constitute a joint venture was missing, it held that plaintiffs representations and actions in entering into the contract as a joint venture, opening a bank account in the name of the joint venture, and purchasing a performance bond in the same way, was sufficient to estop Allan from denying the existence of a joint venture.
III.
Plaintiff has acknowledged that in view of the situation with which the Corps of Engineers was faced after Bertling was declared a bankrupt, the Corps "wanted to do the proper thing, the right thing, the lawful thing.”[2] Nevertheless, plaintiff invokes the maxim that "ignorance of the law is no excuse” and relies on section 70(b) of the Bankruptcy Act, 52 Stat. 880, 11 U.S.C.A. § 110b, (1970), which provides in substance that the trustee shall assume or reject an executory contract within 60 days after the adjudication or 30 days after the qualification of the trustee, whichever is later, and that any such contract not assumed or rejected within that time shall be deemed to be rejected. We agree with plaintiff that if the trustee fails to assume or reject an executory contract within the 60-day period, he loses his right to perform a contract that is beneficial to the bankrupt’s estate. In Re Gravure Paper & Board Corp., 234 F.2d 928 (3d Cir. 1956). However, the application of this rule is not, as plaintiff contends, determinative of the issue of defendant’s liability for a material breach of the contract.
As stated in Part I, plaintiff prepared and submitted payment estimate No. 24, on August 31, 1972, covering the period from June 24 to August 31, 1972. On October 17, 1972, defendant mailed a check for $15,678 for that estimate to the trustee; it was payable to the plaintiff and the trustee. Plaintiff prepared and submitted Estimate No. 25 on September 30, 1972; it covered the period from September 1 to September 30, 1972. Defendant mailed the *203 check for $9,270 in payment of that estimate to the trustee on October 16, 1972, and plaintiff terminated the contract on October 17, 1972, the next day. In handling the two checks as stated, defendant believed that it was following the instructions it had received from Referee Moller and from the office of the trustee, and there were reasonable grounds for that belief. Moreover, defendant’s actions were not without legal justification. Although the trustee did not assume the executory contract in writing within 60 days after Bertling was adjudicated a bankrupt, the assumption by the trustee of an executory contract pursuant to section 70(b) of the Bankruptcy Act may be shown by acts or oral statements of the trustee as well as by formal written declaration. Brown v. Presbyterian Ministers Fund, 484 F.2d 998, 1007 (3d Cir. 1973), and defendant acted on oral instructions received from the trustee’s office. Also, the bankruptcy court had jurisdiction to order the amount due on Estimates No. 24 and No. 25 paid into court to await the outcome of a plenary suit to determine the ultimate disposition of the money. In Re Nathan Turin, 55 F.2d 672, (S.D. N.Y. 1931), a decision which was cited with approval by the Supreme Court in Steelman v. All Continent Co., 301 U.S. 278, 289 (1936).
The letters which the defendant sent to the referees in bankruptcy and to the trustee show that the Corps did not anticipate that the trustee would refuse to permit the proceeds of the two checks to be used by plaintiff in the performance of the contract or to return them to the defendant. On the contrary, defendant’s letters called attention to the necessity for avoiding delay in making the progress payments and urged the trustee to cooperate with plaintiff by making the two checks available to plaintiff for use in completing the contract. Therefore, after careful consideration of the rather unusual facts and circumstances in this case, we conclude that the manner in which the defendant handled the two checks and the delay in making the progress payments from August 31, 1972 to October 17, 1972, did not constitute a material breach of the contract which warranted plaintiffs action in ending the agreement. Cf. Northern Helex Co. v. United States, 197 Ct. Cl. 118, 124, 455 F.2d 546, 550, (1972).
*204 IV.
We do not decide that the defendant was wholly without fault. However, since plaintiff elected to continue performance after terminating the contract because of the claimed breach by defendant, we find that plaintiff has been paid the full amount of the damages it is entitled to recover to the extent that defendant breached the contract.
In Northern Helex Co. v. United States, 197 Ct. Cl. 118, 125-26, 455 F.2d 546, 551, (1972), this court declared:
There is, of course, venerable authority that, wherever a contract not already fully performed is continued in spite of a known breach, the wronged party cannot avail himself of that excuse (Williston, Contracts, 3rd ed., Vol. 5, § 688). * * * As a general proposition, one side cannot continue after a material breach by the other (such as failure to pay), act as if the contract remains fully in force (although stopping performance would be fair and convenient), run up damages, and then go suddenly to court.
We are convinced that this is what plaintiff has done here. It was losing money on the contract and we think plaintiff decided to continue the work, believing and hoping that it might recoup its losses by seeking recovery on a quantum meruit basis.
As this court held in Northern Helex Co. v. United States, 207 Ct. Cl. 862, 524 F.2d 707 (1975), cert. denied, 429 U.S. 866 (1976), the purpose of an award of damages is to place the plaintiff in as good a position as it would have been had the contract been fully performed. In this case, the contractor completed the work which it agreed to perform and has been paid the full amount of the contract price, except for $100, which was retained to keep the contract open for administration.[3] Consequently, the upper limit of plaintiffs recovery is the contract price. Restatement, Law of Contracts, §§ 329, 346(2); United States v. Mountain States Constr. Co., 588 F.2d 259 (9th Cir. 1978); United States Potash Co. v. McNutt, 70 F.2d 126, 130 (10th Cir. 1934).
*205 Plaintiffs theory of damages is premised on its asserted right to terminate the contract and to proceed to completion on a quantum meruit.basis. It claims it is entitled to recover all of its costs, plus an allowance of 10 percent for overhead and 10 percent for profit. Even if plaintiff were entitled to recover upon quantum meruit, its costs would be irrelevant, because the recovery on that theory is based on the benefit erroneously conferred on the receiver and not the cost to the supplier. Campbell v. Tennessee Valley Authority, 421 F.2d 293, 296-97 (5th Cir. 1969).
Cities Service Gas Co. v. United States, 205 Ct. Cl. 16, 500 F.2d 448 (1974), relied upon by plaintiff is inapposite. The issue in that case was whether the gas sold by plaintiff was subject to regulation by the Federal Power Commission and therefore whether the Government was entitled to pay for it at the rates fixed by the jurisdictional tariffs on file with the Commission. The Commission ruled that the sales of gas were not subject to its jurisdiction. Nevertheless, the Government insisted that the plaintiff continue to sell it gas at the rates shown in the jurisdictional tariffs. Plaintiff thereupon terminated the contract, but continued to supply gas, and the Government accepted delivery thereof. The court concluded that the exchange of letters between the parties showed a meeting of minds which resulted in an implied contract, but held that plaintiffs recovery on quantum meruit under an implied contract is not based on plaintiffs costs but on the reasonable value of the property in the market place where sold, citing Campbell v. Tennessee Valley Authority, supra. In this case, there was no meeting of the minds which resulted in the creation of an implied contract to pay plaintiff its costs, plus overhead and profit.
V.
For the first time in this proceeding, plaintiff called attention during oral argument to 11 U.S.C. § 23(i) (1976), section 5(i) of the Bankruptcy Act of 1898, and urges that the application of this provision entitles plaintiff to recover. Section 5(i) provides in substance that if one, but not all, of the partners in a firm, is adjudicated a bankrupt, the *206 partnership property shall not be administered in bankruptcy, except with the consent of the partners who are not adjudged bankrupt. The section further provides that the solvent partners shall settle the partnership business as expeditiously as possible and account for the interest of the bankrupt in the partnership. The purpose and effect of section 5(i) is explained in Collier on Bankruptcy, § 5.36 (14th ed. 1978), as follows:
Subdivision i contemplates a case where the partnership as such has not been adjudged bankrupt, although one or more, but not all, of its general partners are before the court. While the court has jurisdiction over the interest of the bankrupt partners in the partnership property, the solvent partner may, after that interest has been ascertained and set apart, insist that the firm property be administered elsewhere than in bankruptcy. This doctrine seems to be based upon the fact that bankruptcy of a partner works a dissolution of the firm and the solvent partner may therefore close up the business of the firm as if the bankrupt partner were actually dead. The only interest that the trustee of an individual bankrupt partner has in partnership property in the hands of the unadjudicated partner is the right to demand and receive the partner’s interest, if any, in the firm assets after an accounting and payment of debts out of property belonging to the partnership. (Footnotes omitted.)
In general, the law relating to dissolution and termination of partnerships is applicable to joint ventures. See 46 Am. Jur. 2d, Joint Ventures, § 4 (1969). The bankruptcy of a member of a partnership or a joint venture works a dissolution of a joint venture, but does not terminate it. 60 Am. Jur. 2d Partnership, §§ 185 and 235 (1972).
Applying these rules to the situation here, it seems clear that the plaintiff, as the solvent member of the joint venture, had the right to administer the property of the bankrupt, as well as the obligation to complete the contract with the defendant and to account for the remaining assets, if any, belonging to the bankrupt. Marnet Oil & Gas Co. v. Staley, 218 F. 45 (5th Cir. 1914); Brandt & Brandt Printers v. Klein, 220 F.2d 935 (2d Cir. 1955).
However, recognition of these principles does not settle the question of defendant’s liability for breach of the *207 contract. There is enough uncertainty with respect to other aspects of bankruptcy law to persuade us that there was not a material breach of the contract as of October 17, 1972, which justified plaintiffs termination of the agreement on that date. In Kerry v. Schneider, 239 F.2d 896 (9th Cir. 1956), the court, relying on 11 U.S.C. § 110(c), held that when a petition in bankruptcy is filed, the trustee may step into the shoes of the bankrupt as a member of the partnership. As shown in Part I, this is the action which defendant had urged the trustee to take. Defendant did not learn until long after plaintiff had terminated the agreement that the trustee would not participate with plaintiff in the completion of the contract and permit the proceeds of the two progress payment checks to be used for that purpose. In Kelly v. Bartlette, 29 F.2d 569 (5th Cir. 1928), a fund of money in a bank was claimed by the trustee as the property of the bankrupt, and was also claimed by the solvent partner. The bankruptcy court issued an order that the bank should retain possession of the fund pending a determination of ownership, and the Fifth Circuit held on appeal that the solvent partner had no right to complain of this order.
In view of the uncertainties in the law and the defendant’s reasonable interpretation of Referee Moller’s letter of October 3,1972, as well as the defendant’s reliance on the information given to defendant by employees in the office of the trustee, we reiterate our holding in Part III that the defendant’s handling of the checks for the two progress payments was not such a material breach of the contract that plaintiff was justified in terminating it on October 17, 1972.
VI.
For the reasons stated in the foregoing opinion, defendant’s motion for summary judgment is granted; plaintiffs cross-motion for summary judgment is denied, and plaintiffs petition is dismissed.

 Even if we held that a joint venture did not exist in fact and in law, it would not change the result in this case. See Part IV, infra.

 Brief for Plaintiff at 5.

 The plaintiff would have been entitled to recover this $100, but it has not claimed it.