## IRVING TRUST CO. et al. v. DENSMORE et al.
### No. 7034.

Circuit Court of Appeals, Ninth Circuit.
June 19, 1933.

Gold, Quittner & Kearsley, of Los Angeles, Cal. (A. S. Gold, Charles H. Veale, Francis F. Quittner, and George Manns, all of Los Angeles, Cal., of counsel), for appellants.

Harry L. Cohn, Jonah Jones, Jr., and John Amsbary, all of Long Beach, Cal., for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

The interveners and appellees, who were lessors of certain real property in Long Beach, Cal., brought suit by petitioning for an order to require the receiver of their lessee, which is one of the appellants herein, to pay the rentals stipulated in the lease, from the date on which the receiver came into constructive possession of the property, March 21, 1932, to the date when the receiver gave notice to the lessors that he disaffirmed the lease contract, May 28, 1932.

An order was issued by the court below requiring the receiver, who is another of the appellants herein, to show cause why he should not be directed to pay the sum of $6,-190.56, with interest, to the appellees. The said sum represented two months' rental, at $1,800 per month, plus $2,590.56 as the second half of the taxes for 1931—1932.

It was stipulated between the receiver, on the one hand, and the appellees, on the other, that the order to show cause would be submitted to the court below on an agreed statement of facts. From that agreed statement of facts and from the agreed statement of the case, we glean the following summary of the facts:

The lease provided that, in addition to the rents reserved therein, the lessees should pay all taxes.

On March 21, 1932, the ancillary receiver, to whom we are referring herein simply as the "receiver," was appointed and "took over the constructive possession" of the leased premises.

On March 22, 1932, an additional ancillary receiver was appointed. .

On April 2, 1932, receiver notified the appellees that he had been granted by the court below thirty days in which to affirm or disaffirm the lease. "No other or different notice was served upon the" appellees. The agreed statement of the case shows that the order granting the receiver thirty days' time was made on March 21, 1932.

On April 13, 1932, upon the petition of the receiver, an order was made by the court below "extending the time within which the ancillary receiver was to affirm or disaffirm" the leases, to and including May 21, 1932.

On May 19, 1932, an order was made by the District Court, on petition of the receiver, authorizing the receiver to disaffirm the lease in question.

On June 9, 1932, the receiver delivered to the appellees his check for $700, representing rents collected from subtenants on the leased property during the period between March 21, 1932, and May 21, 1932. The appellees kept the check.

On July 6, 1932, the appellees filed their petition in intervention, for an order requiring the receiver to pay them the rent and the taxes, as set forth above.

On July 27, 1932, the court below handed down an opinion, sustaining the claims of the appellees. At the conclusion of that opinion appeared the following order: "On the facts of the matter as they have been stipulated, I am of the opinion that the order petitioned for should be allowed. It is so ordered."

This is the only text of the court's order that is contained in the record. The citation on appeal by the court below to the appellees herein, however, recites that there was an "order of the court commanding and directing the payment of $5490.56" to the appellees, and the agreed statement of the case refers to "the decree rendered * * * in this cause" on July 27, 1932. It is clear that the court below deducted the $700 paid by the receiver to the appellees from the total amount claimed by the appellees.

From the above order the present appeal was taken.

On August 7, 1932, the F. & W. Grand Corporation was adjudged a bankrupt in the District Court of the United States for the

Southern District of New York, where the primary receivership proceedings had been instituted on March 19, 1932.

On September 29, 1932, the court below made an order "instituting ancillary bankruptcy proceedings" in connection with the F. & W. Grand Corporation.

It will be noted from the foregoing statement of facts that the only reference to the receiver's connection with the premises covered by the lease are the statements that he "took over the constructive possession," and that he collected rents from subtenants of the Grand Corporation, which rents he turned over to the lessors. As we shall presently see, these two simple facts do not establish such possession on the part of the receiver as to render him liable for rent during the interregnum when he was making up his mind whether or not to affirm the lease of his cestui que trust.

It is well established that receivers are not liable on the contracts of their cestuis que trustent *by operation of law*, but can be rendered liable only by reason of some affirmative acts of their own.

In High on Receivers (3d Ed.) § 273, page 238, we find the doctrine thus stated: "As a rule, receivers are not liable upon the covenants of the persons over whose effects they are appointed, but become liable solely by reason of their own acts. And receivers who have been appointed over a corporation, and who have accepted the trust and taken possession of the assets, do not thereby become liable for rent of the premises held by the company under a lease; nor can they be held liable until they elect to take possession of the premises, or until the doing of some affirmative act which would in law be equivalent to such an election. Nor does the receiver, merely by virtue of taking possession of leased property, forming part of the assets or estate of the receivership, become an assignee of the term or liable for the rent in accordance with the covenants of the lease. He is entitled to a reasonable time after taking possession to determine whether he will elect to affirm the lease and retain the premises."

Of course, if the receiver *uses* the property while he is making up his mind, he is liable for a reasonable rental value of the premises. Clark on Receivers (2d Ed.) Volume 1, § 442, pages 600, 601, thus enunciates the rule:

"If the receiver holds on to the property he must pay for it so long as he uses it, but until such election, or the doing of some act which would in fact be equivalent to an election, receivers are not liable on existing leases. If receivers hold on to the property for a reasonable time before they make an election, they become liable for use and occupation by reason of occupying the premises, in other words, by their own acts. * * *

"The question frequently comes up when a receiver refuses to be bound by the obligations of an executory lease, but nevertheless *holds on* to the property until he elects,—what is the measure of the obligation he does assume *for use and occupation*. Does the receiver become liable for *use and occupation* on the basis of the rental reserved in the lease or some other basis? Strictly speaking, he cannot be liable for the rental reserved in the lease because he is not a party to the lease, neither is he a successor, strictly speaking, of the lessee. * * * Such value, we think, would be the reasonable rental value of the premises occupied by the receiver during his *occupancy*." (Italics our own.)

This emphasis upon the *use* of the property by the receiver has been repeatedly laid by the Supreme Court of the United States. In Sunflower Oil Co. v. Wilson, 142 U. S. 313, 322, 12 S. Ct. 235, 237, 35 L. Ed. 1025, quoted by the appellees themselves, the court said: "The receiver did not, simply by virtue of his appointment, become liable upon the covenants and agreements of the railway company. [Authorities cited.] Upon taking possession of the property, he was entitled to a reasonable time to elect whether he would adopt this contract and make it his own, or whether he would insist upon the inability of the company to pay, and return the property in good order and condition; paying, of course, the stipulated rental for it so long as he used it."

Again, in Quincy, etc., Railroad Co. v. Humphreys, 145 U. S. 82, 98, 99, 100, 101, 12 S. Ct. 787, 792, 36 L. Ed. 632, the measure of a chancery receiver's liability on a lease of the corporation was fully discussed. In the course of that discussion Mr. Chief Justice Fuller said:

"But appellants insist that, without regard to privity of estate or privity of contract, receivers in chancery are liable, not for a reasonable rental value during the occupancy of leased property committed to their charge by order of court, but for rental according to the covenants of the leases whenever there are unequivocal acts of use and control of such property; and that they thus adopt the leases and become bound by their terms so long as such use and control con-

tinue. It is said that this is settled doctrine, and that whether receivers take as statutory or common law or quasi or equitable assignees; whether the title is in them, or the estate, or the whole estate, has vested in them, or whether they hold as mere custodians for the court,—is immaterial; that they are put to an election to assume or to reject the leases, and, if they elect to avail themselves of them, they are bound to respond according to their terms. This position ignores any distinction between those who take by operation of law and those who do not, but, inasmuch as it confessedly requires the application of the same rule as in the case of statutory receivers, assignees, and liquidators, this branch of the controversy may be disposed of on appellants'. own ground. That rule is thus stated in Mr. Platt's work on Leases, (volume 2, p. 435,) in reference to assignees in bankruptcy: 'A reasonable time was allowed the assignees to ascertain the value of the lease before they made their election; for which purpose they might have it valued, or put up for sale, without danger of such act being deemed an acceptance. If, however, they accepted a bidding, or dealt with the estate as their own, or used it in a manner injurious to the persons otherwise entitled, they were not within this protection.' The principle that such assignees shall not be held, unless by their consent, to take what will charge the estate with a burden, has been often applied by this court. [Many cases cited.]

"* * * But no authority has yet gone the length of deciding that a landlord is entitled to distrain for or be paid in full rent accruing since the commencement of the winding up, where the liquidator has done nothing except abstain from trying to get rid of the property which the company holds as lessee. * * *

"The court did not bind itself or its receivers eo instanti by the mere act of taking possession. Reasonable time had necessarily to be taken to ascertain the situation of affairs."

In Dushane v. Beall, 161 U. S. 513, 515, 516, 16 S. Ct. 637, 638, 40 L. Ed. 791, the court made it clear that the rule that assignees in bankruptcy "are not bound to accept property which, in their judgment, is of an onerous and unprofitable nature, * * * and can elect whether they will accept or not after due consideration and within a reasonable time, * * * is applicable also to receivers and official liquidators."

In view of the foregoing observations, we find that the recent case of Meehan v. King

(C. C. A. 1) 54 F.(2d) 761, 763, 764, is on all fours with the case at bar. In that litigation, it is true, the powers of a receiver in bankruptcy instead of those of a receiver in equity, were involved, and the court pointed out that the power to appoint a receiver in bankruptcy is statutory, that his authority is derived from the statute, but that the power of a chancery receiver is derived from the order of appointment.

Nevertheless, in view of the foregoing decisions of the Supreme Court, it is clear that the Meehan Case is authority for the proposition that, under circumstances such as those that we are now considering, a receiver in equity should not be held liable for rent.

In the Meehan Case the lessors were asking for the payment of two months' rent as part of the administration expense of the bankrupt's estate on the ground that the receiver failed to disaffirm the lease, and that therefore the estate was liable for the rent. Of the lessor's claim, the court said:

"If the receiver actually occupies the leasehold premises, a reasonable rent is a charge against the administration of the estate. [Cases cited.]

"This brings us to the question of whether or not upon the facts disclosed it can be held that there was occupancy by the receiver.

"No goods belonging to the estate were stored in the warehouse. The receiver did not take actual physical possession of it. It is conceded that certain portions of the leased premises were occupied by subtenants. But the subtenants held possession by virtue of contracts with the bankrupt, and not by virtue of any contract with the receiver. Title to the leasehold premises did not pass to the receiver, and he neither affirmed nor repudiated the lease [case cited]; and unless it can be said that the collection of rents from the subtenants constituted occupancy by the receiver the estate cannot be held liable for use and occupation.

"The possession of the subtenants under leases made before bankruptcy cannot be construed as occupation by the receiver; their contracts were with the bankrupt. Their right to possession was not disturbed by the receiver, nor could it have been without an order of court. The receipt of rent from the subtenants gives no force to the plaintiffs' contention, because it was the receiver's duty to preserve the estate, collect the rents, and hold them subject to the order of the court. When a receiver in bankruptcy acts as an officer of the court in the administration of an estate, the court has jurisdiction to determine

the validity of his acts. The referee ordered the trustee to return to the lessors all sums received during the months of November and December from sublessees. In so doing, he disaffirmed any act of the receiver that possibly could be construed as an affirmance of the lease. The ruling of the referee disallowing appellees' claim was correct. The District Court erred in reversing his decision."

If we compare the facts of the Meehan Case with those in litigation here, and remember that the powers of a receiver in equity are closely analogous to those of a receiver in bankruptcy, we cannot fail to recognize the persuasive effect of the Meehan Case in assisting us in a determination of the present controversy. See, also, St. Joseph, etc., Railroad Co. v. Humphreys, 145 U. S. 105, 113, 114, 115, 12 S. Ct. 795, 36 L. Ed. 690; United States Trust Co. v. Wabash Ry., 150 U. S. 287, 299–301, 14 S. Ct. 86, 37 L. Ed. 1085; Great Western Mining Co. v. Harris, 198 U. S. 561, 576, 25 S. Ct. 770, 49 L. Ed. 1163; Westinghouse Electric & Mfg. Co. v. Brooklyn Rapid T. Co. (C. C. A. 2) 6 F.(2d) 547, 549, 550.

It will be seen from an examination of several of the authorities which we have quoted above, that stress is laid upon the fact of occupancy, use, or actual possession of the premises, as determining the receiver's liability for rent. That such occupancy, use, or actual possession is not an attribute of the constructive possession relied upon here, is too elementary to require much expatiation.

In Lofstad v. Murasky, 152 Cal. 64, 68, 69, 91 P. 1008, 1009, the court thus brought out the distinction between the two kinds of possession:

" 'Actual possession' is a term of well-understood legal meaning, and is used in opposition to the other term 'constructive possession' or 'possession in law.' The distinction between these classes of possession is so well defined and so generally recognized that it is hardly necessary to proceed to any great extent in pointing it out. In a general way, it may be said that constructive possession is that which exists in contemplation of law without actual personal occupancy of the property, such a possession as in contemplation of law proceeds from the vesting of the paramount title or follows in the wake of the legal title, or, as more exactly defined, 'constructive possession, or possession in law as it is sometimes called, is that possession which the law annexes to the legal title or ownership of property when there is a right to the immediate actual possession of such property, but no actual possession.' * * *

"We do not think it necessary to further refer to the authorities defining actual possession. They are agreed that, in order to constitute such possession, there must be an appropriation of the land by the claimant such as will convey to the community where it is situated visible notice that the land is in his exclusive use and enjoyment an appropriation manifested by either inclosing it, or cultivating it, or improving it, or adapting it to such uses as it is capable of." See, also, Brumagim v. Bradshaw, 39 Cal. 24, 44–47; Newcome v. Crews, 98 Ky. 339, 32 S. W. 947; Hodges v. Eddy, 38 Vt. 327, 337.

Accordingly, we do not believe that the constructive possession of the receiver herein was sufficient, under the facts stipulated, to bind him as receiver of the estate for any rent whatsoever to be paid as a receivership expense.

It is conceded, however, by the appellants that, in the bankruptcy proceedings, they do not contend that the lessors would not have a right to file their claim as general creditors to share with all other creditors of the corporation.

We are therefore constrained to reverse the order of the court below, and remand the case to the District Court, with instructions to enter an order denying the appellees' petition.

Order reversed, and case remanded, with instructions.

MACK, Circuit Judge (concurring).

In Meehan v. King the lease had but two months to run after the receiver was appointed. Neither receiver nor trustee in bankruptcy affirmed or disaffirmed the lease. Neither of them actually used the property in the administration of the bankrupt estate. The lessor sought to charge the estate on the theory that a failure to disaffirm was equivalent to an affirmance. If there had been an affirmance of the lease for that period, the lessor would clearly have been entitled not to the reasonable value but to the contractual amount of the rent. His claim for the latter amount was in the circumstances properly denied.

In the instant case there was a disaffirmance by the receiver in the equity suit. While the lessor's claim is for an amount equivalent to the rent reserved in the lease, the substantial basis of his claim is that the constructive possession by the receiver deprived him during that period of his right to interfere with

that possession, and for that reason he is entitled to the rental value of the property.

In my judgment, the landlord is entitled either to be granted leave to enforce the common-law remedies to reobtain possession of the leasehold property, which he would have had but for the receivership, or to be compensated at the fair and reasonable value of the premises pending the determination by the receiver or the court as to affirmance or disaffirmance of the lease. In the case of constructive possession he should, however, make prompt application to the court for such alternative relief. Ordinarily, in my judgment, the court of equity in the exercise of its discretion would condition the delay in the decision of the receiver as to affirmance or disaffirmance by providing for the allowance of the reasonable rental value of the property as an administration claim. No such application, however, is stated to have been made. If it were made and denied, the question of whether such a denial under all the circumstances was an abuse of discretion would be determinable on appeal.

Here, however, the lessor apparently acquiesced in the delay. As the estate had no actual use of the premises and was not thereby enriched, the mere fact that the lessor was deprived of the opportunity to regain his possession and thus may have suffered some pecuniary loss, does not, in my judgment, entitle him to payment either of the fair rental value or of the reserved rent during the interval, as an administration expense.

For this reason I concur in the result.