**In re ELECTROSPACE CORPORA-TION, Bankrupt.**

**BURROUGHS CORPORATION,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

**v.**

**Seymour GILLMAN, Trustee, Defendant-Appellee, Cross-Appellant.**

**Bankruptcy No. 74–B–496.**
**Appeal No. 83 Civ. 2359(RJW).**

United States District Court,
S.D.N.Y.

Feb. 28, 1984.

Brotman & Dolin, New York City, for plaintiff-appellant, cross-appellee; Lester Dolin, Jeffrey D. Ullman, New York City, of counsel.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, New York City, for defendant-appellee, cross-appellant; Daniel A. Zimmerman, New York City, of counsel.

ROBERT J. WARD, District Judge.

Burroughs Corporation ("Burroughs") and Seymour Gillman (the "Trustee"), as trustee in bankruptcy for the estate of Electrospace Corporation, (the "Debtor") have filed cross-appeals from a memorandum opinion of Bankruptcy Judge Joel Lewittes, dated December 30, 1982, and the order entered thereon by Bankruptcy Judge Prudence B. Abram on February 4, 1983. The opinion and order, both filed in the bankruptcy court for the Southern District of New York, adjudicated the Trustee's objections to various claims filed by Burroughs in regard to a computer lease between Burroughs and the Debtor. For the reasons hereinafter stated, the decision of the bankruptcy court is affirmed in part, and reversed in part. The case is remanded to the bankruptcy court for a determination of the amount of Burroughs' administrative priority claim pursuant to section 64(a)(1) of the Bankruptcy Act of 1898 (the "Bankruptcy Act") as amended, 11 U.S.C. § 104(a)(1).[1]

---

**1.** The Bankruptcy Act was repealed by the Bankruptcy Reform Act of 1978. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 § 401(a), Title IV, 92 Stat. 2549, 2682 (1978). However, since this bankruptcy case was commenced under the Bankruptcy Act, that statute, and not the current Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, governs this appeal. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403(a), Title IV, 92 Stat. 2549, 2683 (1978).

Section 64(a)(1) of the Bankruptcy Act provides in pertinent part:

The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition...

## BACKGROUND

On or about February 8, 1972, Burroughs entered into an equipment lease (the "Lease") with a division of the Debtor for the rental of certain Burroughs computer equipment (the "Leased Equipment"). The Lease provided for a gross monthly rental of $5,855.00. However, in view of the length of the sixty-three month term, the Lease allowed the Debtor an eleven percent discount on the gross rental (the "discounted rate"). The Debtor made monthly rental payments of $5,471.50 from March 1972 through February 1974. In March 1974, the Debtor defaulted on the Lease, and no payments have been made on the Lease since. On April 26, 1974, the Debtor filed a petition for arrangement under Chapter XI of the Bankruptcy Act.

On July 15, 1974, International Fastener Research Corp. ("IFR") offered to purchase certain assets of the Debtor, (the "IFR Offer"). Paragraph 1 of the IFR Offer enumerated the assets to be purchased and stated a purchase price of $2,340,000.00. Neither the Lease nor the Leased Equipment was so enumerated. Paragraph 2 provided for IFR's payment of certain obligations as part of the purchase price. Included in these obligations were $14,000.00 for computer rentals and $21,-000.00 for use of the Leased Equipment.[2]

A hearing was held before the bankruptcy court on July 15, 1974 to consider the IFR Offer and a competing offer by Bristol Consumer Products, Inc. The IFR Offer was approved by order of the bankruptcy court on July 19, 1974. Burroughs did not receive notice of either the hearing or the ensuing order authorizing the sale.

The closing on the IFR Offer took place on August 6, 1974, at which time IFR paid the Trustee $2,340,000.00. As part of the purchase price, IFR presented the Trustee with a separate check for $35,000.00 payable to the order of the Trustee and the Franklin National Bank ("Franklin"). The payees deposited this check to their joint demand account, pursuant to the bankruptcy court's order of July 19, 1974.[3] However, simultaneously with their receipt of the IFR check, the Trustee and Franklin issued a check to IFR in the amount of $35,000.00, in violation of the bankruptcy court's order. According to the stipulated facts, this check was issued in order to "cover item 2A(iii) of the IFR Offer." Bankruptcy Court Memorandum Opinion (Dec. 30, 1982) ("Bankruptcy Court Opinion") at 3.[4]

According to the bankruptcy court, Burroughs' claim for post-petition computer rentals constitutes an administrative claim arising out of the costs of preserving the estate. *See, e.g., In re Axton,* 641 F.2d 1262, 1273 (9th Cir.1981); *S & W Holding Co. v. Kuriansky,* 317 F.2d 666, 668 (2d Cir.1963).

**2.** Paragraph 2(a)(iii) provides:

2. The Purchase Price also includes, among other things, payment by the Buyer of the following obligations:

A. With respect to the Nanasi/Record-O-Fone facility at Paterson Plank Road, North Bergen, New Jersey: . . .

(iii) Computer rentals totalling $14,000.00 accruing since April 26, 1974, and the additional sum of $21,000.00, representing use of the computer at said facility, at the rate of $7,000.00 per month, for the 3-month period ending October 26, 1974.

**3.** That order provides in pertinent part:

[It is] ORDERED, that the balance of the net proceeds of sale, together with the balance of funds remaining in the aforementioned Franklin National Bank joint account, shall be deposited at the Security National Bank, 1212 Avenue of the Americas, New York, New York, a designated depository of the United States District Court, Southern District of New York, in a special interest bearing trust account or deposit in the joint names of the Trustee and Franklin with no withdrawals to be made therefrom without further order of this Court, pending a final determination by order of this Court or by stipulation among the Trustee and Franklin as to the validity, extent and priority of all security interests, liens, claims and encumbrances attaching thereto.

**4.** As the bankruptcy court explained:

The purpose of this payment to IFR by the Trustee is not clear. It might have been paid to IFR so they (IFR) could pay Burroughs, or, IFR might have decided they did not want the equipment lease and requested that the Trustee return to them the amount paid by them for the lease. In any case, the payment was made by the Trustee, with the estate's funds, without authorization of this Court.

In the meantime, Burroughs made informal attempts to retrieve the Leased Equipment. Between June 5, 1974 and September 18, 1974, Burroughs sent several letters to the Trustee requesting return of the Leased Equipment. By letter dated September 18, 1974, the Trustee's counsel advised Burroughs' counsel that the Trustee maintained no interest in the Leased Equipment, that no bankruptcy court authorization was required for repossession, and that Burroughs should contact IFR's representatives to arrange for repossession. Burroughs repossessed the Leased Equipment from IFR on October 25, 1974, without ever having initiated formal reclamation proceedings in the bankruptcy court.

On January 20, 1975, Burroughs filed proofs of claim against the Debtor for, *inter alia,* equipment lease rentals for the period March 1974 through October 1974. The Trustee filed an omnibus objection to claims on May 15, 1980, and a trial was held to determine the validity of Burroughs' claims. At trial, Burroughs contended that the Trustee had assumed the Lease and, thus, was responsible to Burroughs for performance of the Lease's terms and conditions. Burroughs argued that it was entitled to an administrative claim in the sum of $35,000.00 or a lien in the sum of $35,000.00 against funds received by the Trustee pursuant to the IFR Offer. Burroughs also sought a general unsecured claim for lease rentals and damages.

The Trustee countered that the Lease had been properly rejected. He argued that Burroughs should be limited to a general unsecured claim for pre-petition lease rentals, as well as another unsecured claim pursuant to Bankruptcy Act § 63(a)(9), 11 U.S.C. § 103(a)(9), for damages arising

from the Trustee's alleged rejection of the Lease. The Trustee conceded that Burroughs was entitled to an administrative priority claim for the Debtor's post-petition use of the equipment, but he argued that such use totalled only two hours of computer time, worth $47.00.

The bankruptcy court concluded that there were two distinct claims presented by Burroughs. According to the bankruptcy court, the first claim, which was stipulated to, was a general unsecured claim for the prepetition lease rentals and for goods sold and delivered. The second claim was a post-petition administrative claim for lease rentals incurred prior to the transaction with IFR.[5]

With regard to the pre-petition claims, the bankruptcy court held that, "[a]s stipulated in the Pre-Trial Order, Burroughs is entitled to a general unsecured claim in the amount of $10,213.47 for pre-petition lease rentals, and $7,146.15 for pre-petition goods sold and delivered." Bankruptcy Court Opinion at 5–6 (footnote omitted). The claim for goods sold and delivered included $1,966.06 for return area destination charges. However, the parties appear to agree that the bankruptcy court failed to take account of a credit of $788.05 against the Debtor's obligation to Burroughs for goods sold and delivered, as stipulated in the Pre-Trial Order, Exhibit B, ¶ 27(d).[6] The amount of Burroughs' general unsecured claim for pre-petition goods sold and delivered should be reduced accordingly, and should total $6,358.00.[7]

Addressing Burroughs' post-petition claims, the bankruptcy court held:

> The Trustee claims that he never assumed the lease. This Court disagrees. In order for the Trustee to assign the lease to IFR as part of the assets pur-

---

5. Additionally, the court concluded:

   There is also a claim by Burroughs for damages arising from termination of the lease. As this termination occured [sic] subsequent to assignment to IFR, Burroughs' damage claim also is one for an administrative expense pursuant to Bankruptcy Act § 378(b).

   Bankruptcy Court Opinion at 5.

6. This discrepancy was pointed out by the Trustee in the Trustee's Brief on Appeal at 8 (May 3, 1983) and was not refuted by Burroughs.

7. According to the stipulations contained in the Pre-Trial Order, without including the credit of $788.05, Burroughs' general unsecured claim for goods sold and delivered totals $7,146.05.

chased by IFR, the Trustee first had to assume the lease. The Trustee received the authorization of the Court to sell the assets of the Bankrupt to IFR. Included in the IFR Offer was their assumption of the lease. It is the determination of this Court that the Trustee timely assumed and thereafter assigned the lease between Burroughs and Electrospace to IFR.

Bankruptcy Court Opinion at 7–8 (footnotes omitted).

Thus, the bankruptcy court held that Burroughs was entitled to an administrative priority claim for rent accrued from April 26, 1974, the date of the filing of the petition, to August 6, 1974, the date of the closing, in the amount of $18,238.33, and that, pursuant to section 70b of the Bankruptcy Act, 11 U.S.C. § 110(b), the Trustee was not liable for rent or damages accruing thereafter.[8] The bankruptcy court also held that the administrative claim should be computed on the basis of the discounted monthly rental rate stated in the Lease.

Burroughs appeals from the bankruptcy court's holding that the Trustee's transaction with IFR constituted an assignment of the Lease. Burroughs contends that the Trustee had assumed the lease, but that he did not assign it and that, even if he did assign it, he was not relieved of liability for rent or damages accruing thereafter. Accordingly, Burroughs argues that it is entitled to an administrative claim for rent from April 26, 1974 to October 25, 1974, the date on which it retrieved its equipment. Moreover, Burroughs contends, apparently without opposition, that, pursuant to the lessee's termination option granted in the Lease, its administrative claim should be computed on the basis of the gross monthly rental reserved in the Lease for a term of less than three years, rather than on the discounted rental rate stated therein for a term of more than five years.

The Trustee cross appeals from so much of the bankruptcy court's order that held

that the Trustee had assumed the Lease. As he did in the bankruptcy court, the Trustee asserts that, because he did not expressly assume the Lease according to the requirements of section 70b, the Lease had been rejected by operation of law. Thus, the Trustee contends Burroughs is entitled to only an unsecured claim for damages based upon this rejection.

## DISCUSSION

The bankruptcy court held that the transaction between the Trustee and IFR constituted an assignment of the Lease. Relying on *In re Sapolin Paints, Inc.*, 20 B.R. 497, 507 (Bkrtcy.E.D.N.Y.1982), the bankruptcy court held that this assignment presupposed an assumption of the Lease by the Trustee. On this appeal, this Court is called upon to determine two separate issues of law. The first issue is whether the bankruptcy court's conclusion that the Trustee assigned the Lease was correct. Secondly, this Court must determine whether the Trustee's actions amounted to an assumption of the Lease pursuant to section 70b of the former Bankruptcy Act. This Court agrees that the Trustee assumed the Lease, and to that extent the decision of the bankruptcy court is affirmed. However, the Court finds that the record does not support the bankruptcy court's conclusion that the Trustee assigned the Lease to IFR, and this aspect of the bankruptcy court's decision is reversed.

### A. *Assignment*

■ It appears from the Bankruptcy Court Opinion that the bankruptcy court interpreted the IFR Offer as providing for an assignment of the Lease to IFR. *See* Bankruptcy Court Opinion n. 13. This Court agrees with both Burroughs and the Trustee that the IFR Offer cannot be so interpreted. Paragraph 1 of the IFR Offer specifies the assets of the Debtor to be sold to IFR as part of the transaction with the Trustee. Neither the Leased Equipment nor the Lease, itself, was included in this

---

**8.** The bankruptcy court held that "[t]o the extent that Burroughs may have a valid claim for damages arising out of the terminated lease, it must

pursue such claim against IFR, not a party to the instant proceedings." Bankruptcy Court Opinion at 9 (footnote omitted).

paragraph. Similarly, paragraph 2, enumerating the obligations to be paid by IFR as part of the purchase price, does not provide for an assignment of the Lease by the Trustee or its assumption by IFR.

In the common law of landlord and tenant, an assignment of a lease exists only when the lessor parts with his entire interest in the property without retaining any reversionary interest. If the lessee retains any such reversionary interest, no matter how small, the transfer constitutes a mere sublease. *See, e.g., Lomax Holding Co. v. Calitri,* 461 N.Y.S.2d 152, 153, 117 Misc.2d 941 (N.Y.App.Div.1983). In the instant case the Trustee transferred less than the entire interest of the estate in the Lease. The Lease's sixty-three month term was not to expire until 1977, and the Trustee granted IFR the right to use the equipment only until October 26, 1974, with leave to negotiate with Burroughs for the continuation of the Lease. The IFR Offer was silent as to the disposition of the Leased Equipment or of the Lease in the event that IFR did not make arrangements with Burroughs by October 26, 1974 for continuation of the Lease. In short, a review of the terms of the IFR Offer reveal that the Trustee did not transfer the estate's entire interest in the Lease and, thus, did not assign the Lease to IFR.

■ Paragraph 2A(iv) of the IFR Offer is inconsistent with the bankruptcy court's conclusion that the Trustee assigned the Lease to IFR.[9] If an assignment had been intended, there would be no necessity for a provision in that paragraph anticipating future negotiations between IFR and Burroughs with regard to the continuation of the Lease beyond October 26, 1974. The provision in paragraph 2A(iv) that, if IFR failed to obtain a continuation by that date,

IFR would indemnify the Trustee against a portion of any claim filed by Burroughs against the Trustee, would also be unnecessary if the Trustee had assigned the entire interest in the Lease to IFR.

In sum, the terms of the IFR Offer reveal that the Trustee transferred less than the estate's entire interest in the Lease to IFR. IFR agreed merely to pay certain monthly rental fees and did not agree to assume all of the debtor's obligations under the Lease. No other provision of the IFR Offer contradicts this conclusion, and nothing else in the record indicates that a complete assignment was intended. Accordingly, this Court cannot agree with the conclusion of the bankruptcy court that the Trustee assigned the Lease to IFR.

### B. *Assumption*

■ The Trustee argues that the bankruptcy court's holding that the Trustee assumed the Lease is incorrect because that holding is premised on the erroneous conclusion that the Trustee assigned the Lease to IFR. The bankruptcy court determined that the IFR Offer required the Trustee to assign the Lease to IFR and that, because "assignment presupposes assumption" *In re Sapolin Paints, Inc.,* 20 B.R. at 507, the Trustee must be held to have assumed the Lease. Since this Court has found that the IFR Offer did not provide for such an assignment, the Trustee argues that there is no basis upon which to conclude that the Trustee assumed the Lease. Thus, the Trustee continues, the estate is responsible only for an administrative claim for the value of the benefits obtained by the estate. *See American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 124 (2d Cir.1960) ("The claim of a creditor having an execu-

---

9. Paragraph 2A(iv) reads as follows:
    2. The Purchase Price also includes, among other things, payment by the Buyer of the following obligations:
    A. With respect to the Nanasi/Record-O-Fone facility at Paterson Plank Road, North Bergen, New Jersey: ...
    (iv) If, by October 26, 1974, the Buyer shall not have concluded agreements with the respective lessors for the continuation of the

realty and computer leases referred to in subparagraph 2A(ii) and (iii) hereinabove, the Buyer will pay to you, in respect of any claim filed with you by said lessors, an additional sum equal to the dividend payable on such lessor's claim, which shall not exceed one year's rental, computed at the same rate as the dividends which shall become payable to the general creditors of the bankrupt.

**638**

tory contract with the debtor at the time the debtor's petition is filed is entitled to priority ... only if the trustee or debtor in possession elects to assume the contract or if he receives benefits under it."). Burroughs counters that since the Trustee sublet the Equipment to IFR or, at least, gave IFR possession of and control over the Leased Equipment, the Trustee must be held to have assumed the Lease.

Neither section 70b, nor Rule 607, Rules Bankr.Proc., establish any formal manner in which a trustee must assume an executory contract.[10] *See* Countryman, *Executory Contracts in Bankruptcy; Part II*, 58 Minn.L.Rev. 479, 538 (1974). "An assumption may be shown by word or by deed consistent with the conclusion that the Trustee intended to assume." *In re Steelship Corp.*, 576 F.2d 128, 132 (8th Cir. 1978). *See also Allan Construction Co., Inc. v. United States*, 646 F.2d 487, 493, 227 Ct.Cl. 193 (1981); *Brown v. Presbyterian Ministers Fund*, 484 F.2d 998, 1007 (3d

Cir.1973); *Nostromo, Inc. v. Fahrenkrog*, 388 F.2d 82, 84–85 (8th Cir.1968); *In re Forgee Metal Products*, 229 F.2d 799, 801–02 (3d Cir.1956); *In re Sapolin Paints, Inc., supra*, 20 B.R. 497 (quoting *In re Steelship Corp.*); 4A *Collier on Bankruptcy* ¶ 70.43[5], at 531 (14th ed. 1978).

To properly conclude that a trustee in bankruptcy assumed an executory contract or lease, a court must identify some affirmative act of the trustee consistent with the conclusion that the trustee elected to assume the contract or lease. *Irving Trust Co. v. Densmore*, 66 F.2d 21, 23–4 (9th Cir.1933). As the Supreme Court explained long ago:

A reasonable time was allowed the assignees [in bankruptcy] to ascertain the value of the lease before they made their election; for which purpose they might have it valued, or put up for sale, without danger of such act being deemed an acceptance. If, however, they accepted a bidding, or dealt with the estate as their

---

10. Section 70b provides:

The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected. If a trustee is not appointed, any such contract or lease shall be deemed to be rejected within thirty days after the date of the order directing that a trustee be not appointed. A trustee shall file, within sixty days after adjudication or within thirty days after he has qualified, whichever is later, unless the court for cause shown extends or reduces the time, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee. Unless a lease of real property expressly otherwise provides, a rejection of the lease or of any covenant therein by the trustee of the lessor does not deprive the lessee of his estate. A general covenant or condition in a lease that it shall not be assigned shall not be construed to prevent the trustee from assuming the same at his election and subsequently assigning the same; but an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give

the other party an election to terminate the same is enforcible. A trustee who elects to assume a contract or lease of the bankrupt and who subsequently, with the approval of the court and upon such terms and conditions as the court may fix after hearing upon notice to the other party to the contract or lease, assigns the contract or lease to a third person, is not liable for breaches occurring after the assignment.

Rule 607 provides:

Within 30 days after the qualification of the trustee, unless the court for cause shown extends or reduces the time, the trustee shall file a statement showing any executory contracts of the bankrupt, including unexpired leases, which the trustee has assumed. Whenever practicable, the trustee shall obtain approval of the court before he assumes a contract. Any such contract not assumed within 60 days after qualification of the trustee, or within such further or reduced time as the court may allow within such 60-day period, shall be deemed to be rejected. If a trustee does not qualify, any such contract shall be deemed to be rejected at the expiration of 60 days after the date of an order directing that a trustee be not appointed, or at such earlier or later time as the court may fix within such 60-day period. On application by the trustee for authority to assign any contract he has assumed pursuant to this rule, the court shall determine the matter after hearing on notice to the other party to the contract.

own, or used it in a manner injurious to the persons otherwise entitled, they were not within this protection.

*Quincy, Missouri & Pac. R.R. Co. v. Humphreys,* 145 U.S. 82, 99, 12 S.Ct. 787, 793, 36 L.Ed. 632 (1892) (quoting 2 *Platt on Leases* at 435). Thus, in *In re Huntington Ltd.,* 654 F.2d 578, 587 (9th Cir.1981) the court held that a Chapter XI receiver assumed an unexpired lease because "there was no affirmative action by either the debtor or the receiver to reject the lease. Rather, the receiver spent considerable funds on the maintenance of the leasehold and continued to pay rent ... throughout the bankruptcy proceedings." Similarly, in *Matter of Zacherl Coal Co., Inc.,* 14 B.R. 1001–02 (Bkrtcy.W.D.Pa.1981), the court, relying on *Brown v. Presbyterian Ministers Fund, supra,* 484 F.2d 998; *Nostromo, Inc. v. Fahrenkrog, supra,* 388 F.2d 82; *In re Forgee Metal Products, supra,* 299 F.2d 799, held that the affirmative action of a trustee in petitioning to sell an unexpired lease "operated as a final and complete assumption of the executory lease and that no further action was required to establish said items as assets to [sic] the estate," even though the sale was not consummated.[11]

■ In the instant case, the Trustee, by transferring possession of and control over the Leased Equipment to IFR, performed an affirmative act equivalent to an election to assume the Lease. Paragraph 2A(iii) of the IFR Offer establishes the charges to be paid for accrued rent and for the "use of the computer ... for the 3-month period ending October 26, 1974." As consideration for this transfer, IFR was obligated to pay $35,000.00 to the estate. In accepting IFR's bid and transferring the possession of and control over the Leased Equipment to IFR, the Trustee dealt with the Lease and the Leased Equipment as his own. This transaction is sufficient to satisfy the affirmative act requirement and, thus, for this Court to hold that the Trustee assumed the Lease.[12] *See Irving Trust Co. v. Densmore, supra,* 66 F.2d at 23–24.

■ As the bankruptcy court explained in *In re Sapolin Paints, Inc., supra,* 20 B.R. at 507, while

[a]ssignment presupposes assumption....

There can be no question but that under § 70b of the Bankruptcy Act (former 11 U.S.C. § 110(b)) far less has been held sufficient to show assumption of an executory contract by a bankruptcy trustee. "An assumption may be shown by word or by deed consistent with the conclusion that the trustee intended to assume." (citations omitted).

The Trustee presents two arguments to support his contention that he should not be held to have assumed the lease. First, the Trustee argues that he did not formally assume the Lease within the sixty-day period provided in section 70b, and, thus, the Lease must be deemed rejected as a matter

---

**11.** It has been concluded that, at least with respect to equity receiverships, "some action by a receiver may be held to amount to adoption despite an intention to the contrary...." Clark, Foley and Shaw, *Adoption and Rejection of Contracts and Leases by Receivers,* 46 Harv.L.Rev. 1111, 1125 (1933). This article explains:

When ... after the expiration of the trial period a receiver ... in the case of a lease, retains possession of the land or excludes the lessor, the receiver will, in fairness to the solvent party, be held to have adopted the contract or lease regardless of his actual intention ...

*Id.* at 135–36.

*See also In re Public Ledger, Inc.,* 161 F.2d 762, 767 (3d Cir.1947). Relying on Clark, Foley and Shaw, *supra,* for its holding that a trustee in a Chapter X case assumed an executory contract

even though the court had not expressly approved the assumption; *but cf.,* 4A *Collier on Bankruptcy* ¶ 70.43[5] at 531–32, n. 30b (asserting that there is a higher degree of judicial supervision and responsibility for reorganizations accomplished under the Bankruptcy Act than for those accomplished under the old equity receivership procedure).

**12.** Moreover, this transaction deprived Burroughs of the possession of and control over its equipment until October 25, 1974, during which time Burroughs could neither put this equipment to other uses nor lease it to a third party. In fairness to Burroughs, the Trustee should be held to have assumed the Lease regardless of his actual subjective intentions. *See* Clark, Foley and Shaw, *supra* at 1135–36.

of law. In support of this argument, the Trustee asserts that he failed to comply with the explicit requirements of section 70b and Rule 607, Rules Bankr.Proc., for assumption of leases inasmuch as (a) he neither sought nor obtained the express approval of the bankruptcy court for any assumption of the Lease; and (b) he did not give notice to Burroughs of either the June 15, 1974 hearing regarding the IFR Offer or the June 19, 1974 order approving that Offer. Secondly, the Trustee argues that he should not be held to have assumed the Lease because he did not intend to do so. The Court finds neither argument persuasive, and discusses each one in turn.

The Trustee, relying upon section 70b and Rule 607, asserts that the Lease could not have been assumed because the bankruptcy court never expressly approved an assumption. This argument is unconvincing both because this Court is not persuaded that the express approval of the bankruptcy court is always required for a valid assumption, and because the bankruptcy court implicitly approved the assumption in this case. Although the bankruptcy court's order of July 19, 1974 did not expressly authorize or approve an assumption of the Lease by the Trustee, it did authorize the transfer of possession of and control over the Leased Equipment to IFR. In so doing, the bankruptcy court implicitly approved the Trustee's assumption of the Lease. *See In re Sapolin Paints, Inc., supra,* 20 B.R. at 507–08.

Implicit court approval of a trustee's acceptance or rejection of a contract has been found in several cases. In *In re R. Hoe & Co., Inc.,* 508 F.2d 1126 (2d Cir.1974), the Second Circuit held that there had been implicit court approval of a trustee's rejection of an executory contract under former Bankruptcy Act section 116(1), 11 U.S.C. § 516(1). In that case, the trustee in a Chapter X proceeding objected to recognition of a claim for damages based on the rejection of an executory contract on the ground that the procedure required for the proper rejection of an executory contract had not been followed. The debtor in that case had agreed to fulfill its executory

contracts in return for the payment of a premium over the contract price. The plaintiff, a party to one of these renegotiated contracts sought recovery of the premium, arguing that the trustee's refusal to carry out the contract as initially agreed upon constituted a rejection of an executory contract between the debtor and the plaintiff. The trustee argued that "the prerequisites to a successful claim of breach of an executory contract are express rejection following a hearing on notice to the parties and permission of the court to reject. None of these elements, according to the trustee, is present here." 508 F.2d at 1130. The Second Circuit held otherwise, concluding:

> It is true that judicial action is necessary for rejection of an executory contract in a Chapter X proceeding, and that the formalities must ordinarily be complied with. But the record of these proceedings discloses an in-court coalescense of repudiation by the trustee with approval by the court.... While the trustee occasionally said he was not rejecting the original contracts, the effect of what was happening was precisely that. The court obviously gave its blessing to the increases in contract price, and authorized the trustee to give priority to completing the work under the new arrangements. We believe that this satisfied the requirements of sections 116 and 202 of the Bankruptcy Act that the court "permit" the rejection of an executory contract.

(footnotes and citations omitted.) *Id.*

In *In re Sapolin Paints, Inc., supra,* 20 B.R. 497, the court found implicit approval of a trustee's assumption of a lease under section 356(a) of the Bankruptcy Code of 1978 ("the Code"), 11 U.S.C. § 356(a). The court recognized that although the Code "requires that the assumption of a contract receive the approval of the bankruptcy court ... that approval may be manifested in a variety of ways." *Id.* at 507. Relying on *In re R. Hoe & Co., Inc., supra,* 508 F.2d 1126, the court held that the bankruptcy court had implicitly approved the Trustee's assumption of the lease when it ap-

proved the transfer of the debtor's assets to the buyer. 20 B.R. at 508.

Similarly, in the instant case, the bankruptcy court, after a hearing, expressly authorized the execution of the IFR Offer. Included in this transaction was the transfer of the possession of and control over the Leased Equipment by the Trustee to IFR. By executing this transaction, the Trustee continued to exert dominion over the Leased Equipment. Thus, the bankruptcy court's approval of the IFR Offer necessarily constituted implicit judicial authorization for the Trustee's assumption of the Lease.

Moreover, although the bankruptcy court in this case did implicitly authorize the Trustee's assumption of the Lease, it is questionable whether such authorization was essential to the validity of the assumption. While the cases are split on this issue,[13] neither section 70b nor any other provision of the Bankruptcy Act "indicates whether court approval is required for assumption or rejection, as distinguished from assignment, of a contract." Countryman, *supra* at 538–39. Moreover, Rule 607 "provides merely an exhortation that the trustee gain court approval of the assumption of a contract." *Id.* at 540.[14]

In *In re Steelship Corp., supra,* 576 F.2d 128, decided after the promulgation of Rule 607, the Court refused to hold that a trustee cannot be said to have assumed a contract absent express judicial approval. The court explained:

> While we note that the preferable procedure would have been for [the trustee] to petition the court for either rejection or assumption, we decline to hold that Rule 607 contemplates a result whereby the trustee can knowingly assume the benefits of the bankrupt's contract and avoid

exposing the estate to liability by failing to call it to the court's attention.

576 F.2d at 133, n. 2. *See also In re Sapolin Paints, Inc., supra,* 20 B.R. at 507 (the Bankruptcy Act does not require "that the assumption of a contract receive the approval of the bankruptcy court.")

In the instant case, it would be inappropriate to allow the Trustee to avoid liability for the assumption of the Lease merely because he failed to seek the formal authorization of the bankruptcy court for his actions. This Court is unwilling to adopt such an overly formalistic view of the precepts and requirements of the Bankruptcy Act, especially where, as here, such an approach may well operate to the detriment of a creditor. *See, e.g., Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) ("[W]e do not read [the Bankruptcy Act's] statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.").

Similarly, this Court cannot permit the Trustee to avoid liability for the assumption of the Lease on the ground that he failed to notify Burroughs of either the July 15, 1974 hearing or the July 19, 1974 order with regard to the IFR Offer. The Trustee may not evade the requirements of the Bankruptcy Act and the Bankruptcy Rules and then rely upon these indiscretions to avoid liabilities otherwise owed by the estate.

Moreover, inasmuch as this Court holds that the Trustee did not assign the Lease to IFR, the Trustee's reliance on Rule 607 is misplaced. That rule expressly requires notice to a creditor only "[o]n application by the trustee for authority to assign any contract he has assumed pursuant to this

---

**13.** *Compare, e.g., In re Grainger,* 160 F. 69, 75 (9th Cir.1908); *In re Northern Indiana Oil Co., Inc.,* 65 F.Supp. 167, 168 (N.D.Ind.1946); and *In re Schilling,* 251 F. 966, 969 (N.D.Ohio 1918) (court approval required) with *Nostromo, Inc. v. Fahrenkrog, supra,* 388 F.2d at 84; and *Texas & N.O.R. Co. v. Phillips,* 196 F.2d 692, 695 (5th Cir.1952); and *Green v. Finnigan Realty Co.,* 70 F.2d 465, 466 (5th Cir.1934) (although obtaining

court approval is "good practice" it is not essential to the validity of a trustee's assumption of executory contracts.).

**14.** Rule 607 provides in pertinent part:

Whenever practicable, the trustee shall obtain approval of the court before he assumes a contract.

rule." Neither Rule 607 nor any other provision of the Bankruptcy Act or the Rules of Bankruptcy Procedure cited by the Trustee require notice to creditors before a hearing regarding the trustee's assumption of a contract or lease.[15] Accordingly, the bankruptcy court's order of July 19, 1974 was sufficient to satisfy the requirements of section 70b. Thus, the Trustee implicitly assumed the Lease within the sixty-day period prescribed by that section, and the Lease may not be deemed rejected.

■ The Trustee's second argument, *i.e.*, that he should not be held to have assumed the Lease because he did not expressly intend to assume it is not supported by the facts of this case. Central to such an inquiry is whether the trustee has acted with respect to the estate in a manner "consistent with the conclusion that the trustee intended to assume" the Lease.[16] *In re Steelship Corp., supra,* 576 F.2d at 132. *See also Brown v. Presbyterian Ministers Fund, supra,* 484 F.2d at 1007; *Nostromo, Inc. v. Fahrenkrog, supra,* 388 F.2d at 84–85; *In re Forgee Metal Products, supra,* 229 F.2d at 801–02; 4A *Collier on Bankruptcy* ¶ 70.43[5] at 531 (14th ed. 1978). Where, as here, the Trustee dealt with the leased assets as his own, transferring possession of and control over them in exchange for valuable consideration, a court may conclude that the Trustee had elected to assume the Lease. *See, e.g., Irving Trust Co. v. Densmore, supra,* 66 F.2d at 24. Thus the Trustee's actions in the instant case present objective evidence of the Trustee's intention to assume the Lease and fully support this Court's conclusion that he did so.[17]

### C. *The Termination Option*

One of the terms of the Lease granted the lessee a termination option to be exercised upon the condition that the lessee pay Burroughs the difference between the gross monthly rental rate of $5,855.00 and the discounted rate, plus interest and taxes on this difference for the period between the commencement of the Lease and its termination. This option is stated in a letter agreement, dated January 21, 1972, between Burroughs and the Debtor which was made a part of the lease. The termination option is stated in the following paragraph of the letter agreement:

... [the Debtor] may terminate this contract prior to thirty-six months after one year of installation by paying Burroughs the difference between the standard one-year rate and the discounted five-year rate, plus interest on said difference of the then current price rate, plus taxes, for the number of months the system has been on billing.

Both the Trustee and Burroughs agree that Burroughs' claim should be computed as prescribed by this termination option. The parties disagree however as to the effective date of the Lease's termination as well as to the interest rate to be applied. On remand, the bankruptcy court is directed to determine the amount of Burroughs' administrative claim consistent with this termination option.

### CONCLUSION

In summary, this Court holds that although the Trustee did not assign the Lease, in transferring possession of and

**15.** The purpose of the notice requirement for hearings regarding a Trustee's assignment of a contract "which is particularly important with regard to leases, is to protect the other party against the substitution of an undesirable or irresponsible assignee." 4A. *Collier on Bankruptcy* ¶ 70.43[7] at 534 (footnote omitted). No such protection is necessary when a trustee merely seeks to assume a lease because the estate continues to be liable for its contractual obligations.

**16.** The Trustee's reliance on the "business judgment" test adopted in *In re Minges,* 602 F.2d 38, 43 (2d Cir.1979) is misplaced. That case held that the "business judgment" test is the appropriate test for a court to apply in determining whether to permit a trustee to reject an executory contract. *Minges* did not address the question of whether, and under what circumstances, a trustee's actions should be held to evidence a prior intention to assume or reject an executory contract or lease.

**17.** *See supra* n. 12.

control over the Leased Equipment for a period of three months, the Trustee implicitly assumed the Lease. Burroughs is entitled to a general unsecured claim in the amount of $10,213.47 for pre-petition rent and $6,358.00 for pre-petition goods sold and delivered. Burroughs is further entitled to an administrative priority claim for post-petition rent due under the Lease. The case is remanded to the bankruptcy court for a determination of the amount of this administrative claim.

Accordingly, the decision of the bankruptcy court is affirmed in part and reversed in part.

It is so ordered.